IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALBERT VERRECCHIA, : CIVIL ACTION NO.
Inmate No. 54697
Adult Correctional Institution :
P.O. Box 8293
Cranston, Rhode Island 02920 : CA 06 496 S

Petitioner :

vs. :

:

JAMES WEEDEN, WARDEN, :
Adult Correctional Institution
Cranston, Rhode Island, :

PATRICK CL LYNCH
ATTORNEY GENERAL, STATE OF :
RHODE ISLAND
:
Respondent(s)

**PETITION FOR WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. 2254**

1. Name and location of court which entered the judgment of conviction under attack:

Superior Court, State of Rhode Island, Justice Edward C. Clifton

2. Date of judgment of conviction: April 13, 1999

3. Length of Sentence: 25 years' imprisonment

4. Nature of Offense: racketeering, racketeering conspiracy, burglary, robbery, receiving stolen property, etc.

5. What was your plea? Not Guilty

6. Kind of Trial: Jury

7. Did you testify at trial? No

8. Did you appeal the judgment of conviction? Yes

9. If you did appeal, answer the following:

(a) Name of Court: Supreme Court of Rhode Island

(b) Result: Remanded for Evidentiary Hearing on Suppression Motion

(c) Date of Result: ***State vs. Verrecchia***, 766 A2d 377, 2001 R.I. Lexis 46 (2/15/01)

(a) Name of Court: Supreme Court of Rhode Island

(b) Result: Affirmed

(c) Date of Result: ***State vs. Verrecchia***, 880 A2d 89, 2005 R.I. Lexis 163 (8/23/05)

10. Other than a direct appeal from the judgment of conviction and sentence, have you filed any petitions, applications, or motions with respect to this judgment in any court, state or federal? No

11. If the answer to 10 was "yes," give the following information:

(a)(1) Name of court:

(a)(2) Nature of proceeding:

(a)(3) Grounds Raised:

(a)(4) Did you receive an evidentiary hearing on your petition, application, or motion?

(a)(5)

(a)(6)

(b) As to any second petition, application or motion, give the same information:

(b)(1) Name of court:

(b)(2) Nature of proceeding:

(b)(3) Grounds Raised:

(b)(4) Did you receive an evidentiary hearing on your petition, application, or motion?

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application, or motion?

(1)

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground on which you request action by the federal court.

(a) The conviction was obtained and sentence imposed in violation of the Sixth Amendment right to a speedy and public trial. The facts and legal principles supporting the claims are set forth in the Memorandum of Law, a copy of which is attached hereto and incorporated by reference herewith.

(b) The conviction was obtained and sentence imposed as result of the trial court's mistaken belief that a criminal defendant is not entitled to an instruction on entrapment unless the defendant admits the elements of the criminal offense(s).

13. If any of the grounds listed in this Petition were not previously presented in any other court, state or federal, please state briefly what grounds were not so presented, and give your reasons for not presenting them. The grounds presented herein were fairly presented to the highest state court.

14. Do you have any petition or appeal now pending in any other court, state or federal, state briefly what grounds were not so presented, and give your reason for not presenting them. N/A

15. Give the name and address of each attorney who represented you in the following stages of the judgment attacked herein:

(a) Preliminary Hearing:

(b) At arraignment & plea:

(c) At trial: Dena Paolino, Esquire, 533 Pontiac Avenue, Cranston, R.I. 02910

(d) At sentencing:

(e) On appeal:

(f) In any post conviction proceedings:

(g) On any appeal from any adverse ruling in a post conviction proceeding:

16. Were you sentenced on more than one count of an indictment in the same court at the same time? Yes

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Petitioner is serving a concurrent federal sentence which also is the subject of a collateral attack.

WHEREFORE, Petitioner prays that the district court GRANT the petition.

Cheryl J. Sturm
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
484/771-2000

S. Paul Ryan
Attorney-at-Law
670 Willett Avenue
East Providence, R.I. 02915
401/437-0660

## DECLARATION

The undersigned declares, under penalties of perjury pursuant to 28 U.S.C. 1746, that the facts set forth in the 2254 habeas corpus petition are true and correct.

Albert Verrecchia

Albert Verrecchia, Petitioner

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALBERT VERRECCHIA,<br>Inmate No. 54697<br>Adult Correctional Institution<br>P.O. Box 8293<br>Cranston, Rhode Island 02920 | : CIVIL ACTION NO.<br>:<br>: CA 06 496 S |
| Petitioner | : |
| | : |
| vs. | : |
| | : |
| JAMES WEEDEN, WARDEN,<br>Adult Correctional Institution<br>Cranston, Rhode Island, | :<br>: |
| PATRICK C. LYNCH<br>ATTORNEY GENERAL, STATE OF<br>RHODE ISLAND | : |
| | : |
| Respondent(s) | |

**MEMORANDUM OF LAW SUPPORTING PETITION FOR HABEAS CORPUS UNDER 28 U.S.C. 2254**

**ALBERT VERRECCHIA** hereby petitions this Honorable Court to grant habeas corpus pursuant to 28 U.S.C. Section 2254 for the following reasons:

1. The conviction was obtained and/or sentence imposed in violation of the Sixth Amendment to the Constitution of the United States, specifically, the right to the assistance of counsel and the right to effective assistance of counsel.[1]

---

[1] The Sixth Amendment provides, in pertinent part, as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to

2. The conviction was obtained and/or sentence imposed in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, specifically the right to due process of law and equal protection of the laws.[2]

## I. INCORPORATION BY REFERENCE

The facts set forth in the in the 2254 form are incorporated by reference herewith as if set forth at length hereat.

## II. THE STATE'S VERSION OF THE FACTS

The State of Rhode Island charged Albert Verrecchia with membership in a criminal organization known as "the Golden Nugget Group." ["GNG"]. Michael Rossi, who for all practical purposes was the leader of the GNG, was arrested. Facing life in prison, Mr. Rossi agreed to cooperate with the Rhode Island State Police ["PISP"]. The RISP devised a sting operation targeting Albert Verrecchia, who, according to Mr. Rossi, was storing firearms, masks, uniforms and other props for the GNG. The RISP made special arrangements for Mr. Verrecchia to visit Mr. Rossi, who was incarcerated. During one of the visits, Mr. Rossi informed Mr. Verrecchia that "The Ghost," a fellow inmate who expected to be released on bail, would be contacting him looking to purchase firearms. Mr. Rossi instructed Mr. Verrecchia to sell the firearms to The Ghost. A

---

have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

[2] The Fifth Amendment provides, in pertinent part, as follows: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law... The Fourteenth Amendment provides, in pertinent part, as follows: "...No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

member of the PISP posing as The Ghost contacted Mr. Verrecchia, who followed instructions.

On May 9, 1996, the RISP arrested Mr. Verrecchia and charged him with two counts of receiving stolen goods. Subsequently, the RISP executed a search warrant for a barn leased to Mr. Verrecchia. The RISP recovered firearms, uniforms, masks, etc. Based on Rossi's testimony and the physical evidence seized as a result of the sting operation, Mr. Verrecchia was charged with an additional 67 crimes including racketeering, burglary, robbery, conspiracy and receiving stolen goods. Eventually, a grand jury indicted Mr. Verrecchia and 42 other defendants charging criminal acts on behalf of the GNG including racketeering, burglary, robbery, conspiracy and receiving stolen goods.

Mr. Verrecchia awaited trial for thirty (32) months while the State stalled, lingered and delayed.[3] The State's appellate opinion indicates the delay was caused by Mr. Verrecchia's inability to maintain a relationship with his attorneys. The record, however, indicates that Mr. Verrecchia filed motions for a speedy trial, and that the trial was delayed by the prosecution, which failed to prosecute the case with reasonable diligence. The trial commenced January 12, 1999 and ended February 9, 1999, when the jury convicted on 29 of the 66 counts he faced.[4]

Petitioner appealed to the Supreme Court of Rhode Island raising the following issues: (1) violation of the Fourth Amendment right not to be subject to unreasonable

---

[3] ***State vs. Verrecchia***, 766 A2d 377, 385 measured the delay from the date of indictment to the date of trial. However, it was required to measure the delay from the date of arrest to the date of the trial. This would be approximately 32 months, not approximately 29 months as set forth in the State's appellate opinion.

[4] The original indictment included a total of sixty-nine (69) counts against Mr. Verrecchia. On January 13, 1999, the trial judge dismissed two of the counts. On February 3, 1999, the trial judge dismissed a third count. As such, 66 counts were submitted to the jury.

searches and seizures; (2) violation of the Sixth Amendment right to a speedy and public trial; (3) violation of the right to a fair trial by virtue of the trial court's refusal to give an entrapment instruction; (4) violation of the right to a fair trial by virtue of the trial court's refusal to give a duress instruction. ***State vs. Verrecchia***, 766 A2d 377, 2001 R.I. Lexis 46 (2/15/01), and ***State vs. Verrecchia***, 880 A2d 89, 2005 R.I. Lexis 163 (8/23/05)

**III. THE INSTANT HABEAS CORPUS PETITION IS TIMELY**

28 U.S.C. 2241(d)(1) reads, in pertinent part, as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing the application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-134, 110 Stat. 1214 (1996) [the "AEDPA"] was signed into law on the afternoon of April 24, 1996.

The Rhode Island Supreme Court affirmed August 23, 2005. The Petitioner did not file a petition for certiorari. The AEDPA deadline is November 21, 2006, which is (90) ninety days from August 23, 2005. ***Clay vs. United States,*** 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003).

The instant habeas corpus petition is filed well within the one year statute of limitations.

**IV. FEDERAL CONSTITUTIONAL ISSUES WERE FAIRLY PRESENTED TO STATE COURT SYSTEM IN A FEDERAL FORMAT**

***Galdamez vs. Keane,*** 394 F3d 68, 72 (2d Cir. 2005) reads, in pertinent part, as follows:

> Comity concerns lie at the core of the exhaustion requirement. As the Supreme Court explained,
>
> > State Courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief. This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having an opportunity to correct the constitutional violation in the first place. ***O'Sullivan*** 526 U.S. at 844, 119 S.Ct. 1728

See also: ***Jackson vs. Edwards***, 404 F3d 612 (2d Cir. 2005)[good analysis of fair presentation doctrine]

***Dye vs. Hofbauer***, ___U.S.___, 126 S.Ct. 5, 163 L.Ed.2d 1 (2005) involved an application for habeas corpus under 28 U.S.C. Section 2254 (habeas corpus by a prisoner subject to a state court judgment). The Supreme Court ruled that the prisoner is

considered to have exhausted state remedies if he informs the state court that the state court ruling not only violates state law but also federal law. The Court stated that if the federal claim is exhausted even if the state court system ignores it.

In the present case, the same facts and issues presented herein were presented to the highest state court. The issues were fairly presented, and thus, "exhausted."

**V. THE STANDARD OF REVIEW**

28 U.S.C. 2254(d)(1) reads, in pertinent part, as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

Where the Rhode Island state court system makes findings of fact, and conclusions of law, the findings and conclusions will not be overturned unless they are "unreasonable."

The term "unreasonable" means "some increment of incorrectness beyond error is required...however, the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." ***Francis S. vs. Stone***, 221 F3d 100, 111 (2d Cir. 2000).

Where, as here, the Rhode Island state court system relies on assumptions not supported by the record, the district court should simply disregard the State court system and start from scratch. ***Everett vs. Beard***, 290 F3d 500, 508 (3d Cir. 2002). "When, as here, AEDPA does not apply for that reason, the pre-AEDPA standards of review apply. Under that standard, a federal habeas court owes no deference to a state court's resolution

of mixed questions of constitutional law and fact." **Id.** at 508 citing ***Williams vs. Taylor***, 529 U.S. 362, 400, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In ***Williams***, Justice O'Connor stated, "we have always held that federal courts, even on habeas, have an independent obligation to say what the law is" citing ***Wright vs. West***, 505 U.S. 277, 305, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

Here, the State court system's findings of fact and conclusions of law are not supported by the record; as such, the state court's findings of fact and conclusions of law are not entitled to deferential review.

## VI. GROUND ONE: THE STATE DEPRIVED THE PETITIONER OF HIS SIXTH AMENDMENT RIGHT TO A SPEEDY AND PUBLIC TRIAL

The Sixth Amendment to the Constitution of the United States guarantees the right to a speedy and public trial. The right to a speedy trial is a "fundamental right" that applies to the states through the Fourteenth Amendment. ***Klopfer vs. North Carolina***, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)["We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment."].

In ***Barker vs. Wingo***, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court articulated four factors that must be considered in determining whether the right to a speedy trial has been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant sustained prejudice. No one of the factors constitutes "a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. ***Barker***, 407 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." ***Id.***

### *1. The length of the delay*

The length of the delay is the threshold requirement. If the length of the delay is not uncommonly long, then judicial examination comes to an end. ***Doggett vs. United States***, 505 U.S. 647, 652, 120 L. Ed. 2d 520, 112 S.Ct. 2686 (1992). The length of the delay is measured from the date of arrest or the date of indictment, whichever comes first. ***United States vs. Marion***, 404 U.S. 307, 320, 30 L.Ed.2d 468, 92 S.Ct. 455 (1971). A delay approaching twelve (12) months is presumptively prejudicial, and triggers application of the remaining three factors. ***Doggett,*** 505 U.S. at 652, note 1.

Here, the Petitioner suffered an uncommonly long delay of approximately 32 months measured from the date of arrest to the date of commencement of the trial. Notably, ***State vs. Verrecchia***, 766 A2d 377, 385 incorrectly measures the delay from date of indictment to date of commencement of trial, which shortens the delay by three (3) months. Even so, the appellate court found the delay presumptively prejudicial.

***2. Reasons for the delay***

The second factor to be considered is the reason for the delay. In considering this factor, some reasons carry more weight than others. For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the state while more neutral reasons weigh against the state less heavily. The purpose of the inquiry is to allocate blame for the delay. ***Doggett***, 505 U.S. at 651.

The trial judge ruled that Mr. Verrecchia was "responsible, either through his own actions or through the actions of his attorneys *** [for] almost [all], if not all, of the delay." The appellate court adopted the position of the trial judge even though it is not supported by the record, which indicates the state made repeated motions for continuances, and did not timely produce discovery even after it was ordered to do so.

Furthermore, the record indicates the Petitioner made repeated demands for a speedy and public trial. The trial judge's findings to the contrary are clearly erroneous. The appellate court's findings to the contrary are "clearly erroneous." [See transcript dated January 20, 1999, page 215 [failure to produce fingerprint evidence or lack thereof], 220-229 [failure to produce tape recorded evidence] for a sample of defense counsel's complaints about the State's failure to comply with discovery orders.]. The record shows that Mr. Verrecchia had several attorneys, but it does not show that the turnover was attributable to the actions of Mr. Verrecchia, nor does it support the claim that the delay was caused by the turnover. Whatever the case, Mr. Verrecchia was not responsible for the sequence of changes in counsel. At one point, his primary attorney resigned to take the job as the Federal Defender.

The finding that Mr. Verrecchia was responsible for almost all of the delay should be swiftly rejected because it is not supported by the record and is, therefore, "clearly erroneous."

***3. Petitioner's assertion of his speedy trial rights***

The third factor is the defendant's assertion of his speedy trial rights. A "defendant's assertion of his speedy trial right…is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right." ***Barker,*** 407 U.S. at 531-32. Even a request for bail is the functional equivalent of a request for a speedy trial. ***Cain vs. Smith***, 686 F2d 374, 384 (6th Cir. 1982). Petitioner made a request for bail. He proclaimed his innocence. Besides the request for bail, Petitioner made several motions for a speedy trial. The repeated requests for a speedy trial undercuts the theory that Mr. Verrecchia was changing lawyers to delay the trial.

***4. Prejudice***

The fourth factor is prejudice. The Supreme Court has stated that the accused need not point to "affirmative proof of particularized prejudice." in every case. ***Doggett vs. United States***, 505 U.S. 647, 655, 120 L.Ed.2d 520, 112 S.Ct. 2686 (1992). Rather, the Court stated, "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." ***Id.***

The Supreme Court has identified three areas a court should consider when determining prejudice in speedy trial cases: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; (3) the possibility the defense will be impaired. ***Barker***, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of the defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." But see ***Doggett*** at 505 U.S. 659-662 stating that the liberty interests--not impairment of the defense--is at the core of the right to a speedy trial.

In this case, the Petitioner suffered three forms of prejudice. First, the Petitioner was subjected to a lengthy pretrial incarceration. During part of this time, Petitioner was subjected to federal charges relating to felon-in-possession of a firearm. Had the State charges been resolved promptly, the Petitioner would have been entitled under USSG 5G1.2(b) to credit against the federal sentence for the undischarged portion of state sentence. Second, Petitioner suffered anxiety and concern as a result of the State's failure to afford him a speedy trial. Third, the case against Petitioner was constructed around the testimony on Michael Rossi, who stated under oath that Mr. Verrecchia accompanied him

when he committed certain burglaries and robberies on specific dates and at specific times. Mr. Verrecchia claimed that he was having dinner with his mother at the same time Mr. Rossi had him committing crimes. Accordingly, had the State afforded Mr. Verrecchia the speedy trial to which he was entitled under the Constitution, Mr. Verrecchia would have had an alibi for much of the criminal activity attributed to him by Mr. Rossi.

In sum, the State appellate court's findings of fact are clearly erroneous. The delay was 32 months measured from the date of arrest to the date of commencement of the trial. (The delay was not 29 months as stated in the appellate opinion). The delay was more attributable to the state's failure to provide discovery and obey discovery orders than to a change of counsel. The Petitioner repeatedly requested a speedy and public trial. The delay caused Petitioner anxiety and concern about his fate, and denied Petitioner any realistic chance of marshalling alibi witnesses, who died over the 32 months the case was inactive.

## VII. GROUND TWO: THE PETITIONER WAS DENIED A FAIR TRIAL BECAUSE THE TRIAL JUDGE REFUSED TO GIVE AN ENTRAPMENT INSTRUCTION

It is well-established that federal habeas corpus will not be granted based on an error of state law unless the state law violation renders the trial fundamentally unfair in violation of due process. ***Estelle vs. McGuire***, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

In the present case, Petitioner's counsel informed the trial judge that she intended to raise the defense of entrapment with respect to the counts involving the possession of firearms. [Tr. at 229-230]. The trial court's response was as follows:

> THE COURT: In order to assert a defense of entrapment, must not the defendant admit the commissions of the crimes?
>
> MS. PAOLINO: Yes, your Honor.
>
> THE COURT: Is Mr. Verrecchia prepared to do that and say but I was led down this path by someone else?
>
> MS. PAOLINO: Well, the defense of entrapment is kind of tricky.
>
> THE COURT: You better believe it's tricky, and that's why I'm asking the question. Is Mr. Verrecchia, at least my understanding of entrapment requires that the defendant say I did it. I did all that you're saying I did, however, I had no prior criminal intent to do something, and but for the motivation, but for the actions of some other person, I would not have done it. And I only did it because some nefarious, low-living law enforcement person got me to do it. [Tr. at 230].

The position of the trial judge is contrary to and an unreasonable application of ***Mathews vs. United States***, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) which held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."

In the present case, there was evidence that Mr. Rossi induced the Petitioner to produce firearms for "The Ghost" and there was evidence that Mr. Verrecchia was not predisposed to possess the firearms. The defense of entrapment was a crucial part of the case with respect to the production of the firearms. But for the sequence of criminal

activity involving "The Ghost" it is questionable whether the jury would have taken the word of Mr. Rossi for anything else because he committed perjury at least one time before, and he was granted substantial benefits in exchange for his testimony against Mr. Verrecchia.

The trial judge's position that Petitioner could not claim entrapment without admitting all elements of the offense behavior derailed the defense theory of the case, denying Petitioner a fundamentally fair trial in violation of the due process clause.

**VIII. CONCLUSION**

The Petition should be GRANTED. In the alternative, the Court should grant an evidentiary hearing, then grant the writ.

Cheryl J. Sturm
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
484/771-2000

S. Paul Ryan
Attorney at Law
670 Willett Avenue
East Providence, R.I. 02915
401-437-0660