UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALBERT VERRECCHIA | : C.A. 06-496S |
| | : |
| v. | : |
| | : |
| JAMES WEEDEN, ET AL. | : |

**TRAVERSE**

Petitioner, Albert Verrecchia, by and through his attorneys, submits the following as his traverse to the State's response opposing his Section 2254 petition for habeas corpus by a prisoner in state custody.

**I. THE STATE'S RESPONSE DOES NOT COMPLY WITH THE PROVISIONS OF RULE 5 OF THE RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURT AND THE FAILURE TO COMPLY IS NOT HARMLESS ERROR**

Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts reads, in pertinent part, as follows:

> **Rule 5. The Answer and the Reply**
>
> **(a) When Required.** The respondent is not required to answer the petition unless a judge so orders.
>
> **(b) Contents: Addressing the Allegations; Stating a Bar.** The answer must address the allegations in the petition. In addition, it must state

whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity or a statute of limitations.

**(c) Contents: Transcripts.** The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed. The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.

**(d) Contents: Briefs on Appeal and Opinions**. The **respondent must** also file with the answer a copy of:

(1) any brief the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post conviction proceeding;

(2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and

(3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.

**(e) Reply**. The petitioner may submit a reply to the respondent's answer or other pleading within a time fixed by the judge.

The State's Response does not attach relevant parts of the transcript. The habeas corpus cannot be addressed without the attachments, especially since the habeas corpus alleges "the Rhode Island state court system relies on assumptions not supported by the record." [2254 habeas corpus memorandum at page 6, paragraph 2].

For example, it would be an unreasonable construction of the trial record to conclude that Mr. Verrecchia caused the delay by churning lawyers. On May 9, 1996, Mr. Verrecchia was arrested by the Rhode Island State Police. On July 24, 1996, the indictment was returned. On July 24, 1996, Mr. Verrecchia was arraigned and ordered held without bail. On August 7, 1996, approximately two weeks after the arraignment, Attorney DeSimone entered his appearance. Attorney DeSimone continued to represent Petitioner through September 4, 1996, the date of the completion of the bail hearing. On September 16, 1996, Mr. Verrecchia filed a pro-se motion for appointment of counsel indicating he was indigent and could no longer retain private counsel. On October 18, 1996, the trial court appointed Charles Rodgers to represent Mr. Verrecchia. On October 21, 1996, the case was scheduled for a pretrial conference, and continued to November 13, 1996. The Clerk made the notation PFI which means pending further investigation. The record does not indicate whether Mr. Verrecchia or the State made the request for the continuance. Between October 18, 1996 and November 7, 1996, Mr. Rodgers was unable to practice law for health reasons. [Tr. 114]. On November 7, 1996, the trial court appointed Attorney Steven Nugent, who was then in private practice, and it allowed Mr. Rodgers to withdraw. On November 15, 1996, Mr. Nugent filed a motion for discovery and inspection of documents. On November 25, 1996, the motion for discovery and

inspection was granted. On November 25, 1996, Mr. Verrecchia filed a motion for a speedy trial. This "was, using the words contained in the Supreme Court decision, the first knock on the door of Mr. Verrecchia asserting his Constitutional Right to a speedy trial." (Six months, sixteen days after date of arrest). On December 4, 1996, the matter was continued until January 22, 1997 pending further investigation. On December 18, 1997, Mr. Nugent filed a motion for permission to exceed the compensation limit for court appointed counsel. On January 31, 1997, Mr. Nugent's motion was approved. (Eight months, 22 days after the date of arrest). At a pretrial conference held January 17, 1997, the matter was continued pending further investigation. On January 31, 1997, the Court granted Mr. Verrecchia's motion for bail on Count 292. The Court set bail at $50,000.00 with surety, but Mr. Verrecchia remained in jail. On January 31, 1997, the Court denied the motion to dismiss the indictment for failure to hold a speedy trial. (Eight months, 22 days after the date of arrest).[1] On February 10, 1997, Mr. Verrecchia, acting pro-se, filed a petition for habeas corpus seeking "Discharge of defendant illegally incarcerated." The petition was scheduled for February 17, 1997, and continued to February 19, 1997. Meanwhile, Mr. Nugent filed a motion to review Mr. Verrecchia's bail. All matters were continued until February 28, 1997, when the Court denied Mr. Verrecchia's habeas corpus petition. (Nine months, 19 days). The matter was continued until March 7, 1997 for reasons unknown. The prosecution stated that the matter was continued to give Mr. Verrecchia time to consider the prosecution's plea offer. On March 7, 1997, the matter was "passed for trial." On April 21, 1997, Mr. Nugent obtained authorization to obtain a private investigator. (Eleven months, 12 days). On May 1, 1997, Mr. Nugent filed

[1] The Court refused to revisit this order on the grounds that it was "the law of the case." [Tr. 116].

numerous motions, including a motion to preclude certain witnesses from testifying, a motion alleging discovery violations, a motion to disclose other crimes which the State would introduce at trial, a motion for exculpatory evidence. The same day, Mr. Nugent filed a motion for a continuance from the trial date of May 12, 1997. The same day, Mr. Nugent listed Mr. Verrecchia's alibi witnesses as Robert Marro, Sr., Robert Marro, Jr., and Dessirie Boisse. Mr. Verrecchia further stated that he was unable to identify all alibi witnesses until the State provided him with the date and time of the alleged offenses. [Tr. 118]. On May 8, 1997, Mr. Nugent filed a motion to dismiss the indictment for failure to hold a speedy trial. In June, 1997, the State provided Mr. Nugent with certain bail hearing transcripts and a tape of a conversation that supposedly took place between Petitioner and Sergeant O'Donnell of the Rhode Island State Police on May 9, 1996. During the month of June, 1997, the Court held more status conferences. On August 5, 1997, Mr. Nugent filed a motion to withdraw as counsel, for reasons totally unrelated to Mr. Verrecchia. [2](One year, two months, 27 days). On August 13, 1997, the Court appointed another lawyer.[3] On August 27, 1997, Robert Watt entered his appearance. (One year, three months, four days). On September 9, 1997, the matter was scheduled for trial on November 24, 1997. (One year, five months, fifteen days). In November, 1997, Mr. Verrecchia requested trial transcripts of State vs. Acciardo. He also requested certain records relating to Michael Rossi. The motions were heard on November 26, 1997 and continued over until December 8, 1997. (One year, six months thirty days). On December 9, 1997, Mr. Watt filed a motion for pretrial relief including the transcript of Rossi's testimony at the Acciardo trial. The motion was continued on December 16, 1997. On

---

[3] The delay was "presumptively prejudicial" at this point because it was approximately one year from the date of arrest. ***Doggett***, 505 U.S. at 652 note 1.

that date, Mr. Watt asked for a continuance. This request for continuance prompted Mr. Verrecchia to file a motion to appoint new counsel on December 24, 1997. (One year, seven months, 15 days). Mr. Watt continued to represent Mr. Verrecchia until January 26, 1998 when he was permitted to withdraw. The Court appointed Edward Roy. On April 16, 1998, the Court heard Mr. Verrecchia's motion for a speedy trial. On April 16, 1998, the matter was scheduled for trial on May 11, 1998 (Two years, three days after arrest). On May 11, 1998, Mr. Verrecchia filed a motion to replace Mr. Roy on the grounds that Mr. Roy made sexual advances to Mr. Verrecchia during a legal visit. The Court appointed Therese Caron to represent Mr. Verrecchia. She entered her appearance on May 26, 1998. On June 16, 1998, Ms. Caron and Mr. Verrecchia attended a status conference. The matter was continued until September 9, 1998 when it was continued again until November 9, 1998. Sometime prior to that date, Ms. Caron filed a motion seeking permission to exceed the cap on compensation for court appointed counsel. On November 2, 1998, Mr. Verrecchia filed a motion to release Ms. Caron because she was trying to persuade him to sign a waiver of the right to a speedy trial. On November 9, 1998, the Court released Ms. Caron, "granted" the third motion for a speedy trial, and continued the matter for a determination of Mr. Verrecchia's continued indigency. [Tr. 124]. The Court scheduled the trial for January 4, 1999. On December 15, 1998, the Court determined that Mr. Verrecchia was not eligible for the services of a Public Defender. On January 4, 1999, Ms. Paolino entered her appearance. On January 4, 1999, the State requested a continuance. On January 7, 1999, the State requested another continuance. On January 12, 1999, the State requested another continuance. [See Trial Transcript pages 57-125].

Given the sequence of events recounted by the trial judge, it seems relatively clear that the decisions of the trial judge and the decision of the highest state court are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings." ***McCambridge vs. Hall***, 303 F3d 24, 36 (1st Cir. 2002)[Unreasonable is some increment of incorrectness beyond error]. A state court decision is "unreasonable" if it is devoid of a record or is arbitrary. ***Id.*** at 36.

In the case at bar, the decision of the trial court and the decision of the Rhode Island Supreme Court are arbitrary and capricious and not supported by the record. Lack of support in the record makes the decisions "unreasonable." The record indicates that Mr. Verrecchia did nothing to impede a speedy trial. To the contrary, the record indicates Mr. Verrecchia was obsessed with having a speedy trial. So much so that Mr. Verrecchia fired Ms. Caron when she tried to get him to waive the right to a speedy trial. There was nothing wrong with this decision, which was made eighteen (18) months after the date of arrest. The record indicates Mr. Verrecchia was pleased with the services of Mr. Nugent, and not very pleased when Mr. Nugent, who had his own life to get on with, chose to leave private practice on or about August 7, 1997, or approximately fifteen (15) months after the date of arrest. The decision that Mr. Verrecchia took numerous steps to impede a speedy trial is arbitrary, capricious and unreasonable because it lacks support in the record.

Likewise, the Rhode Island Supreme Court's position that there was no specific showing of prejudice is not supported by the record. The record indicates Mr. Verrecchia called the trial court's attention to the loss of several alibi witnesses including but not limited to Mrs. Josephine Verrecchia, who passed on during the time the trial was being

delayed by state action or inaction [Tr. 54], Frank Kizer, who passed on during the time the trial was delayed by state action or inaction [Tr. 55]. Debbie Verrecchia, who suffered a brain aneurism during the time the trial was delayed by state action or inaction. [Tr. 55]. The prejudice from the loss of these three witnesses was explained on pages 54-59 of the transcript. There were other witnesses identified at pretrial hearings, and other witnesses that could not be identified until the State provided discovery regarding the dates, and times of the criminal activity.

The Court must require the State to comply with Rule 5 and provide the official transcripts, which will illuminate Petitioner's claim that the decision of the trial judge and the decision of the Rhode Island Supreme Court are based on an unreasonable view of the facts, and that the facts found by the courts are not supported by the record.

**II. THE REFUSAL TO GIVE AN ENTRAPMENT INSTRUCTION WAS AN UNREASONABLE APPLICATION OF FEDERAL LAW**

It is well-established that federal habeas corpus will not be granted based on an error of state law unless the state law violation renders the trial fundamentally unfair in violation of due process**. *Estelle vs. McGuire***, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

In the present case, Petitioner's counsel informed the trial judge that she intended to raise the defense of entrapment with respect to the counts involving the possession of firearms. [Tr. at 229-230]. The trial court's response was as follows:

> THE COURT: In order to assert a defense of entrapment, must not the defendant admit the commissions of the crimes?
>
> MS. PAOLINO: Yes, your Honor.

> THE COURT: Is Mr. Verrecchia prepared to do that and say but I was led down this path by someone else?
>
> MS. PAOLINO: Well, the defense of entrapment is kind of tricky.
>
> THE COURT: You better believe it's tricky, and that's why I'm asking the question. Is Mr. Verrecchia, at least my understanding of entrapment requires that the defendant say I did it. I did all that you're saying I did, however, I had no prior criminal intent to do something, and but for the motivation, but for the actions of some other person, I would not have done it. And I only did it because some nefarious, low-living law enforcement person got me to do it. [Tr. at 230].

The position of the trial judge is contrary to and an unreasonable application of ***Mathews vs. United States***, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) which held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."

In the present case, there was evidence that Mr. Rossi used an assortment of threats to induce the Petitioner to produce firearms for "The Ghost" and there was evidence that Mr. Verrecchia was not predisposed to possess the firearms. The defense of entrapment was a crucial part of the case with respect to the production of the firearms. But for the sequence of criminal activity involving "The Ghost," it is questionable whether the jury would have taken the word of Mr. Rossi for anything else because he

committed perjury at least one time before, and he was granted substantial benefits in exchange for his testimony against Mr. Verrecchia.

The trial judge's position that Petitioner could not claim entrapment without admitting all elements of the offense behavior was not only incorrect but also it derailed the defense theory of the case, denying Petitioner a fundamentally fair trial in violation of the due process clause.

**III. CONCLUSION**

The State should be required to produce the transcripts of each and every hearing directly or tangentially involved in the pretrial delay. In addition, it should be required to produce a complete set of trial transcripts. Finally, the state should be required to produce every scrap of evidence supporting the argument that it was Mr. Verrecchia who was primarily responsible for the pretrial delay. Otherwise, the Petition should be GRANTED.

/s/Cheryl J. Sturm
Cheryl J. Sturm
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
484/771-2000

/s/S.Paul Ryan
S. Paul Ryan
Attorney at Law
Bar ID #2264
670 Willett Avenue
East Providence, R.I. 02915
401-437-0660

**CERTIFICATION**

Pursuant to AP10 of this Court, effective August, 2006, I hereby certify that on the 14th day of December, 2006, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney of record:

Virginia M. McGinn
Department of Attorney General
vmcginn@riag.ri.gov

/s/S. Paul Ryan