UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALBERT VERRECCHIA | : | |
| | : | |
| v. | : | C.A. No. 06-496S |
| | : | |
| JAMES WEEDEN, ET. AL | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Before the Court is Albert Verrecchia's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Document No. 1). Petitioner challenges his state court criminal convictions on two grounds: (1) a claimed denial of his Sixth Amendment right to a speedy trial stemming from a period of pre-trial detention of approximately thirty months; and (2) a claimed denial of his right to due process of law allegedly flowing from the trial justice's refusal to instruct the jury on entrapment. The State of Rhode Island ("the State") has moved to dismiss the Petition. (Document No. 3). This matter has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). Neither party has requested a hearing or argument on the State's Motion, and this Court has determined that none is necessary to resolve the Motion. After reviewing the relevant documents in addition to performing independent research, this Court recommends that the State's Motion to Dismiss be GRANTED and that Petitioner's Petition be DISMISSED WITH PREJUDICE.

**Factual and Legal Background**

The facts underlying Petitioner's convictions are set forth in detail in the opinions of the Rhode Island Supreme Court, see State v. Verrecchia, 766 A.2d 377 (R.I. 2001) ("Verrecchia I") and State v. Verrecchia, 880 A.2d 89 (R.I. 2005) ("Verrecchia II").

In May 1996, Petitioner was arrested following a Government sting. See Verrecchia I, 766 A.2d at 380. Petitioner was initially charged with receiving stolen goods, but was later charged with an additional sixty-seven crimes. Id. In the roughly thirty months during which Petitioner awaited trial, he was represented by seven different attorneys. See id. Each attorney briefly served as Petitioner's defense attorney but, for various reasons, was ultimately terminated by Petitioner or unable to continue representing him. See id.

In February 1999, following a jury trial in Rhode Island Superior Court, Petitioner was found guilty of twenty-nine of the sixty-six counts submitted to the jury. See id. On appeal to the Rhode Island Supreme Court (the "RISC"), Petitioner challenged his convictions on four grounds, only two of which are relevant to the present Petition. First, Petitioner alleged that the State deprived him of his constitutional right to a speedy trial as guaranteed by the Sixth Amendment. See id. at 384. Next, Petitioner asserted that the trial judge erred in failing to instruct the jury on the affirmative defense of entrapment and that this error amounted to a violation of the due process and equal protection clauses of the Fifth and Fourteenth Amendments. See id. at 387. The RISC subsequently affirmed in part and reversed in part. See id. at 377. The RISC found no basis for Petitioner's claim that he was denied his right to a speedy trial or that he was entitled to an entrapment jury instruction,

but remanded for determination of a Fourth Amendment suppression issue. See id. Following remand, the RISC affirmed Petitioner's convictions outright. See Verrecchia II, 880 A.2d at 89.

**Standard of Review**

With the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), 28 U.S.C. § 2254, Congress restricted the power of federal courts to grant habeas relief to prisoners. This Court is guided in the consideration of Petitioner's claims by 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;....

The Court looks to McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002), for its guidance on applying the "unreasonable application" portion of § 2254(d)(1). McCambridge states that "'some increment of incorrectness beyond error is required'...[in an amount] great enough to make the [state court's] decision unreasonable in the independent and objective judgment of the federal court...." Id. at 36 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)). For example, a federal court may find a decision of a state court to be "unreasonable" if that decision is "devoid of record support for its conclusions or is arbitrary." Id. at 37 (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)). In Williams v. Taylor, 529 U.S. 362, 411 (2000), the Supreme Court noted that an "incorrect" application of federal law is not necessarily tantamount to an "unreasonable" one: "a federal habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Another category of state court errors that may be remedied on federal habeas review involves unreasonable determinations of fact. See 28 U.S.C. § 2254(d)(2). Under this standard, a state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary. Mastracchio v. Vose, 274 F.3d 590, 597-598 (1st Cir. 2001) (describing burden on habeas petitioner as a "high hurdle").

**Discussion**

**I. Sixth Amendment Speedy Trial Claim**

As his first basis for habeas relief, Petitioner claims that his trial was unjustly delayed in violation of the Sixth Amendment. Thus, Petitioner is claiming that his constitutional right to a speedy trial was infringed.

The right to a speedy trial is grounded in the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right to a speedy trial is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. See Klopfer v. North Carolina, 386 U.S. 213, 223 (1967).

In Barker v. Wingo, 407 U.S. 514, 530-533 (1972), the Supreme Court set forth a four-part balancing test for use in evaluating potential speedy trial violations. The first prong considers the length of the delay between arrest or indictment and the date of trial. See United States v. Loud Hawk, 474 U.S. 302, 310, 313-314 (1986). Short periods of delay – usually less than one year – are ordinarily insufficient to justify further inquiry. See Doggett v. United States, 505 U.S. 647 (1992).

However, delays that exceed one year will generally warrant additional review. See id. at 652; United States v. Trueber, 238 F.3d 79, 87 (1st Cir. 2001).

The reasons for the delay comprise the second factor in the Baker test. See Barker, 407 U.S. at 531. This element requires that courts not focus on the simple passage of time without considering the reason(s) for the delay. This inquiry into causation involves a sliding scale: deliberately dilatory tactics must be weighed more heavily against the state than periods of delay resulting from negligence. Id. Likewise, to the extent that valid reasons cause the delay, the delay does not count against the state. Id. Also, delay that is caused by a defendant does not weigh against the state. See Davis v. Puckett, 857 F.2d 1035, 1040-1041 (5th Cir. 1988).

The third prong of the Barker framework addresses the timeliness and frequency of the defendant's assertions of his speedy trial rights. See Barker, 407 U.S. at 529. Although the defendant does not waive his constitutional right to a speedy trial by failing to assert it at a time when the state could have remedied the potential violation, his failure to do so means that he must make a much stronger showing on the other factors in order to succeed in his claim. See id. at 532.

The fourth and final prong of the Barker framework implicates the extent to which the defendant was prejudiced by a delay attributable to the state. Id. This factor is grounded in the fact that the speedy trial right is intended to prevent oppressive pre-trial incarceration, minimize the accused's anxiety and limit the possibility that the passage of time will impair the accused's ability to mount a defense. Id.

Applying the Barker test to the facts presented in this case, the RISC found that Petitioner satisfied only two of the four prongs of the test, and therefore it determined that his speedy trial right

had not been violated. As to the first prong, the RISC concluded that the length of time between Petitioner's indictment and trial was "presumptively prejudicial," and thereby necessitated further analysis into the remaining Barker factors. See Verrecchia I, 766 A.2d at 385.[1] Also, because there was evidence in the record indicating that Petitioner filed three motions for a speedy trial, the RISC properly concluded that Petitioner had asserted his Sixth Amendment speedy trial right and that he thereby satisfied the third prong of the Barker test. See id.

However, in considering the second and forth prongs of the test, the RISC found there to be ample record support for the trial justice's findings against Petitioner. In considering which party caused the delay in his trial, the trial justice found that Petitioner "through his own acts, of his own volition, [had] taken steps – numerous steps – which [had] impeded the ability of this matter to proceed to trial." See Verrecchia I, 766 A.2d at 385. As an example of Petitioner's dilatory tactics, the RISC cited the fact that Petitioner "plow[ed] through a succession of lawyers until he found one whom he deemed suitable...." See id. at 385, fn 8. While the RISC readily acknowledged that the State had requested and obtained several continuances, it went on to conclude that most of the delays were attributable to Petitioner's penchant for "churning through" his defense counsel. See id. at 385. Although Petitioner argues that he was not the sole cause for the turnover of his lawyers, he fails to present clear and convincing evidence to this Court to warrant a finding that the RISC made unreasonable determinations of fact in this regard.[2]

---

[1] In his Petition and Traverse, Petitioner argues that the RISC incorrectly calculated the length of the delay as twenty-nine months, and that it should have been thirty-two months. Under either calculation, the delay greatly exceeds one year and is therefore "presumptively prejudicial."

[2] Petitioner also filed a Motion to Compel State to Supply Additional Transcripts. (Document No. 11). In that Motion, Petitioner lists forty-one dates during which pretrial hearings and/or conferences were held in Superior Court and requests that the Court order the State to transcribe those hearings and produce transcripts to this Court. Petitioner

The final prong of the Barker test required the RISC to consider whether the delay between Verrecchia's indictment and trial was unduly prejudicial. Petitioner argued that he "suffered severe anxiety and mental strain caused by his long incarceration...." Verrecchia I, 766 A.2d at 385. The RISC rejected this argument and found that "there was no specific showing in the record of any demonstrable prejudice," as any anxiety or other mental distress suffered by Petitioner was not due solely to his state charges. See id. This conclusion is supported by the fact that Petitioner was "being held concurrently on a probation violation and on federal criminal charges." See id. In fact, Petitioner was ordered detained on federal firearms charges in June 1997 and remained detained through trial. United States v. Verrecchia, CR No. 97-45ML. Following a jury trial, Petitioner was convicted of two federal firearms charges and sentenced in 1998 to a total term of incarceration of 150 months. Id. Petitioner's federal conviction was affirmed on appeal. United States v. Verrecchia, 196 F.3d 294 (1st Cir. 1999).

In addition, the RISC reasonably concluded that Petitioner's contention that important alibi witnesses had died or suffered memory loss was similarly unavailing, as Petitioner failed to identify a single unavailable witness "and he has never provided anything other than idle speculation in support of his contention that they would have been key witnesses at his trial." See id. The RISC

argues that the transcripts will assist him in demonstrating that the trial justice made unreasonable findings of fact and conclusions of law related to the speedy trial claim. The State objected to the Motion (Document No. 12) and noted that the transcripts Petitioner requests include the bail hearing and forty separate pretrial conferences, which commonly occur off the record. The State also notes that the transcripts were never presented to the trial justice in connection with his factual findings. The matter was referred to me for determination, and having reviewed the documents submitted and the reasons supporting Petitioner's Motion, Petitioner's Motion to Compel (Document No. 11) is DENIED. As noted, the trial justice's factual findings are entitled to a presumption of correctness which can be rebutted only by clear and convincing evidence to the contrary. Petitioner has not met this high hurdle and has not convinced me that the requested transcripts would assist the analysis of the speedy trial issue. Petitioner does not point to any specific evidence which the transcripts would provide to this Court, and the Motion to Compel appears to be nothing more than an eleventh-hour effort to create arguments never presented to the Superior Court or RISC.

held, as had the trial justice, that there was insufficient evidence to support a finding that these alibi witnesses were critical. Having reviewed the Petitioner's Traverse and relevant sections of the Transcript, this Court agrees. Petitioner noted that two alibi witnesses, his mother, Josephine Verrecchia, and a neighbor, Frank Kizer, died after his arrest but prior to his trial, and that his daughter, Debbie Verrecchia, suffered memory loss as a result of a brain aneurysm prior to trial. See Document No. 6, p. 8; Document No. 10, Ex. A, p. 54-57. However, Petitioner failed to present clear and convincing evidence that these proposed witnesses would have been critical alibi witnesses. Instead, Petitioner argued that he had a general practice of having dinner with his mother on certain nights and working in his neighbor's garage on certain nights. He presented no evidence that any of the three witnesses would have provided an alibi for the specific times when the numerous crimes on which he was convicted were committed. For these reasons, I find that Petitioner has failed to present evidence to this Court which is sufficient to warrant reconsideration of the factual findings made by the Superior Court or RISC. Further, I find that the RISC's application of the Barker test was reasonable and consistent with U.S. Supreme Court precedent. Accordingly, Petitioner has failed to demonstrate that the RISC's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States...." 28 U.S.C. § 2254(d)(1).

## II. Fourteenth Amendment Due Process Claim

As his second basis for habeas relief, Petitioner claims that the trial justice erred in failing to issue an entrapment instruction, allegedly denying him a fair trial. Thus, Petitioner is claiming that he has been deprived of due process of law, as guaranteed by the Fourteenth Amendment.

The United States Supreme Court's decision in Mathews v. United States, 485 U.S. 58 (1988), provides the applicable test. In Mathews, the Supreme Court held that a defendant is entitled to an entrapment jury instruction only if he has established: (1) that the government induced the crime; and (2) that he lacked the requisite predisposition to engage in the criminal conduct. Id. at 63. The Mathews case also established that a defendant is entitled to an entrapment instruction even if he denies one or more of the elements of the crime charged, as long as there is "sufficient evidence from which a reasonable jury could find entrapment." Id. at 62. Petitioner bears the initial burden to set forth "some evidence" that is "sufficient to raise a reasonable doubt that the defendant was merely an unwary innocent." U.S. v. Luisi, 482 F.3d 43, 58 (1st Cir. 2007).

In applying the Mathews test, the RISC found that the first element of the test was lacking, as Petitioner failed to meet his initial burden to produce evidence that he was entrapped. The RISC found that the State "merely offer[ed] [Petitioner] the opportunity to commit a crime...." Verrecchia I, 766 A.2d at 388. The RISC based this conclusion on the fact that Petitioner "readily agreed" to sell weapons that he was storing on behalf of the criminal enterprise and that he "readily agreed" to meet with the undercover agent to discuss the weapons sale. See id. The RISC also found that Petitioner was not only in possession of a "coffin" filled with weapons at the time of the sting operation, but was wearing stolen clothing and was in possession of stolen goods at the time of his arrest. See id.[3]

---

[3] In his Petition, Petitioner argues that the trial justice denied his request for an entrapment instruction because Petitioner refused to admit that he committed the crimes. In support of his allegation that the trial justice improperly rejected his request for an entrapment defense based solely on his failure to admit to committing the crimes, Petitioner cited a very brief exchange with the trial justice where he indicates that he believes the defense of entrapment requires that a defendant "admit the commissions of the crimes." As noted, under United States v. Mathews, a defendant need not admit all elements of a crime in order to be entitled to an entrapment defense. However, the limited exchange relied upon by Petitioner was not the trial justice's only consideration of the entrapment defense. In fact, the more detailed

Although Petitioner argues that the testimony of his former gang confederate and the undercover police officer satisfy his burden of producing evidence that the State induced the crime, the RISC rejected this argument and noted that there was no evidence presented that the "police had argued or pleaded with Verrecchia or had 'acted with such zeal in pursuing a conviction that their efforts resulted in the commission of a crime that likely would not have occurred if the suspect had been left to his own devices.'" Verrecchia I, 766 A.2d at 377 (internal citation omitted). Having reviewed the RISC's opinion, as well as Petitioner's argument to this Court, I find that Petitioner has failed to adduce adequate evidence – let alone the clear and convincing evidence required by 28 U.S.C. § 2254(e)(1) – to rebut the factual conclusions drawn by the RISC that the State did not induce his criminal conduct. Thus, I find that the RISC's resolution of the entrapment issue was reasonable based on the factual record before it and consistent with U.S. Supreme Court precedent. Accordingly, Petitioner has failed to demonstrate that the RISC's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

**Conclusion**

---

transcripts provided to this Court indicate that both parties were afforded an opportunity to make arguments to the justice, concerning the available defenses, immediately prior to him instructing the jury. During that detailed argument, there was no discussion of the necessity of Petitioner admitting to committing the crimes. Moreover, it is clear that the brief exchange produced to this Court by Petitioner was likely outweighed by later, more detailed discussions, between the parties and the trial justice, as he noted that the parties had been "discussing in Chambers the issue of the defense of entrapment for at least a week...." Tr. 1446. It is therefore clear to this Court that Petitioner has culled a brief exchange from his lengthy trial and attempted to argue that the trial justice made a quick decision concerning the entrapment instruction. Upon a more complete review, however, I find that Petitioner's requested instruction was not denied based on his unwillingness to admit to committing the crimes, but was instead based on the Petitioner's failure to meet his burden of proof under Mathews.

For the foregoing reasons, I recommend that the State's Motion to Dismiss (Document No. 3) be GRANTED and Petitioner's Petition for Writ of Habeas Corpus (Document No. 1) be DISMISSED WITH PREJUDICE. I further recommend that the District Court enter final judgment in favor of the State.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 17, 2007