UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALBERT VERRECCHIA | : C.A. No. 06-496S |
| | : |
| vs | : |
| | : |
| JAMES WEEDEN, et al. | : |

**MOTION TO ALTER OR AMEND FINAL ORDER PURSUANT TO RULE 59(e) F.R.Civ.P.**

**ALBERT VERRECCHIA**, through counsel, moves the Court to alter or amend the final order entered September 20, 2006.

**I. TEXT OF RULE 59(e) F.R.Civ.P.**

Rule 59(e) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> **(e) Motion to Alter or Amend Judgment.** Any motion to alter or amend judgment shall be filed no later than 10 days after the entry of the judgment.[1]

**II. THE STATE'S RESPONSE DOES NOT COMPLY WITH THE PROVISIONS OF RULE 5 OF THE RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURT AND THE FAILURE TO COMPLY IS NOT HARMLESS ERROR**

---

[1] Rule 6(a) F.R.Civ.P. provides that when "the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." The Order at issue was filed September 13, 2007. The instant motion is timely if filed by September 27, 2007.

Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts reads, in pertinent part, as follows:

**Rule 5. The Answer and the Reply**

**(a) When Required.** The respondent is not required to answer the petition unless a judge so orders.

**(b) Contents: Addressing the Allegations; Stating a Bar.** The answer must address the allegations in the petition. In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity or a statute of limitations.

**(c) Contents: Transcripts.** The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed. The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.

**(d) Contents: Briefs on Appeal and Opinions**. The **respondent must** also file with the answer a copy of:

(1) any brief the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post conviction proceeding;

(2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and

(3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.

**(e) Reply**. The petitioner may submit a reply to the respondent's answer or other pleading within a time fixed by the judge.

Rule 5 of the Rules Governing applications for federal habeas corpus 2254 habeas corpus. The State has yet to provide relevant transcripts. The application for habeas corpus cannot be addressed without the transcripts, especially since the basis for the application for habeas corpus is that "the Rhode Island state court system relies on assumptions not supported by the record." [2254 habeas corpus memorandum at page 6, paragraph 2].

An accurate record is essential to just disposition of the claim that the State violated Mr. Verrecchia's Sixth Amendment right to a speedy trial. An accurate record is essential to determine whether the State's violation of mandatory discovery rules caused the unreasonable pretrial delay.

Notably, a statement of facts is valueless unless it is independently documented by a record. ***Baker v. Horn***, 383 F.Supp 2d. 720 (EDPA 2005), ***Baker v. Horn III***, 210 F.Supp2d at 628.

Turning back to this case, the facts that can be verified by independent evidence indicate that on May 9, 1996, Mr. Verrecchia was arrested by the Rhode Island State

Police, an event triggering the right to a speedy trial. On July 24, 1996, the indictment was returned. The same day, Mr. Verrecchia was arraigned and ordered held without bail. On August 7, 1996, approximately two weeks following the arraignment, Attorney DeSimone entered his appearance, and he continued to represent Mr. Verrecchia through September 4, 1996, the date of the completion of the bail hearing. There is no indication of a relationship between the change of attorneys and any pretrial delay. On September 16, 1996, Mr. Verrecchia filed a pro-se motion for appointment of counsel indicating he was indigent and could no longer retain private counsel. On October 18, 1996, the trial court appointed Charles Rodgers to represent Mr. Verrecchia. There is no indication of a relationship between the change of attorneys and any pretrial delay. On October 21, 1996, the case was scheduled for a pretrial conference, and continued to November 13, 1996. The Clerk made the notation PFI which means pending further investigation. The record does not indicate which party made the request for the continuance. Between October 18, 1996 and November 7, 1996, Mr. Rodgers was unable to practice law for health reasons. [Tr. 114]. On November 7, 1996, the trial court granted Mr. Rodgers' motion to withdrawn and it appointed Attorney Steven Nugent, then an attorney in private practice and now a Superior Court Judge. There is no indication of a relationship between the change of attorneys and the pretrial delay. On November 15, 1996, Mr. Nugent filed a motion for discovery and inspection of documents. On November 25, 1996, the motion for discovery and inspection was granted. On November 25, 1996, Mr. Verrecchia filed a motion for a speedy trial. This "was, using the words contained in the Supreme Court decision, the first knock on the door of Mr. Verrecchia asserting his Constitutional Right to a speedy trial." (Six months, sixteen days after date of arrest). On December 4, 1996,

the matter was continued until January 22, 1997 pending further investigation. The record does not indicate which party requested the continuance. However, there is a strong inference that it was not the defendant who made the request because Mr. Nugent filed a motion to dismiss the indictment based on the prosecution's failure to provide discovery in compliance with the trial court's order dated November 25, 1996. Mr. Nugent stated that "The defendant has not contributed to any delay, and the state's failure to comply with the mandatory discovery provisions of Rhode Island Superior court Rule of Criminal Procedure 16 and this court's order granting the defendant's motion to compel has prejudiced the defendant in that he has not been able to prepare a defense and to adequately prepare for trial." [See Exhibit "A" to petitioner's motion to expand the record]. At a pretrial conference held January 17, 1997, the matter was continued pending further investigation. The record does not indicate which party requested the continuance. On January 31, 1997, the trial court set bail at $50,000.00 with surety, but Mr. Verrecchia remained in jail. On January 31, 1997, the trial court denied the motion to dismiss the indictment for failure to hold a speedy trial. (Eight months, 22 days after the date of arrest).[2] The record does not indicate why the motion was denied. On February 8, 1997, the trial court (Gemma, J.) ordered the State to satisfy discovery obligations within 72 hours. [Exhibit C to motion to expand record]. On February 10, 1997, Mr. Verrecchia, acting pro-se, filed a petition for habeas corpus seeking "Discharge of defendant illegally incarcerated." The petition was scheduled for February 17, 1997, and continued to February 19, 1997. Meanwhile, Mr. Nugent filed a motion to review Mr. Verrecchia's bail. All matters were continued until February 28, 1997, when the trial court denied Mr.

---

[2] The Court refused to revisit this order on the grounds that it was "the law of the case." [Tr. 116].

Verrecchia's habeas corpus petition. (Nine months, 19 days). The matter was continued until March 7, 1997. The record does not indicate which party requested the continuance. The prosecution stated that the matter was continued to give Mr. Verrecchia time to consider the prosecution's plea offer. The record does not indicate which party requested the continuance. On March 7, 1997, the matter was "passed for trial." The record does not indicate why the matter was passed for trial. On April 21, 1997, Mr. Nugent obtained authorization to obtain a private investigator. (Eleven months, 12 days). On May 1, 1997, Mr. Nugent filed numerous motions, including a motion to preclude certain witnesses from testifying, another motion alleging discovery violations, a motion to disclose other crimes which the State would introduce at trial, a motion for exculpatory evidence. The same day, Mr. Nugent filed a motion for a continuance from the trial date of May 12, 1997. The same day, Mr. Nugent listed Mr. Verrecchia's alibi witnesses as Robert Marro, Sr., Robert Marro, Jr., and Dessirie Boisse. Mr. Verrecchia further stated that he was unable to identify all alibi witnesses until the State provided him with the date and time of the alleged offenses. [Tr. 118]. On May 8, 1997, Mr. Nugent filed a motion to dismiss the indictment for failure to hold a speedy trial. In June, 1997, several months after the State had been ordered to produce discovery, the State provided Mr. Nugent with certain bail hearing transcripts and a tape of a conversation that supposedly took place between Mr. Verrecchia and Sergeant O'Donnell of the Rhode Island State Police on May 9, 1996. During the month of June, 1997, the trial court held more status conferences. On August 5, 1997, Mr. Nugent filed a motion to withdraw as counsel, for personal reasons totally unrelated to Mr. Verrecchia.[3](One year, two months, 27 days).

---

3

On August 13, 1997, the trial court appointed another lawyer.[4] On August 27, 1997, Robert Watt entered his appearance. (One year, three months, four days). On September 9, 1997, the matter was scheduled for trial on November 24, 1997. (One year, five months, fifteen days). In November, 1997, Mr. Verrecchia requested trial transcripts of State vs. Acciardo. He also requested certain records relating to Michael Rossi. The motions were heard on November 26, 1997 and continued over until December 8, 1997. (One year, six months thirty days). On December 9, 1997, Mr. Watt filed a motion for pretrial relief including the transcript of Rossi's testimony at the Acciardo trial. The motion was continued on December 16, 1997. On that date, Mr. Watt asked for a continuance. This request for continuance propelled Mr. Verrecchia to file a motion to appoint new counsel on December 24, 1997. (One year, seven months, 15 days). Mr. Watt continued to represent Mr. Verrecchia until January 26, 1998 when he was permitted to withdraw.

The trial court appointed Edward Roy. On April 16, 1998, the trial court heard Mr. Verrecchia's motion for a speedy trial. On April 16, 1998, the matter was scheduled for trial on May 11, 1998 (Two years, three days after arrest). On May 11, 1998, Mr. Verrecchia filed a motion to replace Mr. Roy on the grounds that Mr. Roy made sexual advances to Mr. Verrecchia during a legal visit.

The trial court appointed Therese Caron to represent Mr. Verrecchia. She entered her appearance on May 26, 1998. On June 16, 1998, Ms. Caron and Mr. Verrecchia attended a status conference. The matter was continued until September 9, 1998 when it was continued again until November 9, 1998. The record does not indicate which party

---

[4] By this point in time, the delay was presumptively prejudicial.

requested the continuance. On November 2, 1998, Mr. Verrecchia filed a motion to release Ms. Caron because she was trying to persuade him to sign a waiver of the right to a speedy trial. On November 9, 1998, the trial court released Ms. Caron, "granted" the third motion for a speedy trial, and continued the matter for a determination of Mr. Verrecchia's continued indigency. [Tr. 124].

The trial court scheduled the trial for January 4, 1999. On December 15, 1998, the Court determined that Mr. Verrecchia was not eligible for the services of a Public Defender. On January 4, 1999, Ms. Paolino entered her appearance. On January 4, 1999, the State requested a continuance. On January 7, 1999, the State requested another continuance. On January 12, 1999, the State requested another continuance. [See Trial Transcript pages 57-125].

Given the sequence of events recounted by the trial judge, it seems relatively clear that the decisions of the trial judge and the decision of the highest state court are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings." ***McCambridge vs. Hall***, 303 F3d 24, 36 (1st Cir. 2002)[Unreasonable is some increment of incorrectness beyond error]. A state court decision is "unreasonable" if it is devoid of a record or is arbitrary. ***Id.*** at 36. In the case at bar, there is no record to support the decision denying the speedy trial act claim. Lack of support in the record makes the decisions "unreasonable."

Significantly, the Rhode Island court system failed to consider that the record indicates that Mr. Verrecchia was in custody for approximately fifteen (15) months as a result of the State's failure to satisfy its mandatory discovery obligations, and during that period filed repeated motions for a speedy trial. Mr. Nugent's letter indicates Mr.

Verrecchia did nothing to impede a speedy trial, and indicated the State failed to comply with mandatory discovery obligations. [Exhibit "A" to motion to expand the record]. The Rhode Island court system overlooked the initial violation of the speedy trial act. To this date, the State of Rhode Island has not produced transcripts of the hearings that led to the repeated continuances as required by Rule 5 of the Rules Governing 2254 proceedings..

The record indicates Mr. Verrecchia was pleased with the services of Mr. Nugent, and not very pleased when Mr. Nugent, who had his own life to get on with, chose to leave private practice on or about August 7, 1997, or approximately fifteen (15) months after the date of arrest. The decision that Mr. Verrecchia took numerous steps to impede a speedy trial is arbitrary, capricious and unreasonable because it lacks support in the record.

Likewise, the Rhode Island Supreme Court's position that there was no specific showing of prejudice is not supported by the record. With respect to the initial violation of the speedy trial act, which the Rhode Island Court never touched, Mr. Nugent's letter attributes the delay to the State's failure to comply with mandatory discovery rules. With respect to the alleged violations that occurred subsequently, the record indicates Mr. Verrecchia called the trial court's attention to the loss of several alibi witnesses including but not limited to Mrs. Josephine Verrecchia, who passed on during the time the trial was being delayed by state action or inaction [Tr. 54], Frank Kizer, who passed on during the time the trial was delayed by state action or inaction [Tr. 55]. Debbie Verrecchia, who suffered a brain aneurism during the time the trial was delayed by state action or inaction. [Tr. 55].

The prejudice from the loss of these three witnesses was explained on pages 54-59 of the transcript. There were other witnesses identified at pretrial hearings, and other witnesses that could not be identified until the State provided discovery regarding the dates, and times of the criminal activity.

The Court must require the State to comply with Rule 5 and provide the official transcripts, which will illuminate Petitioner's claim that the decision of the trial judge and the decision of the Rhode Island Supreme Court are based on an unreasonable view of the facts, and that the facts found by the courts are not supported by the record. The Court should grant leave to propound interrogatories to now Superior Court Judge Nugent, who is in the best position to explain what caused him to file the motion to dismiss for discovery violations, and for failure to give Mr. Verrecchia a speedy trial.

**III. THE REFUSAL TO GIVE AN ENTRAPMENT INSTRUCTION WAS AN UNREASONABLE APPLICATION OF FEDERAL LAW**

It is well-established that federal habeas corpus will not be granted based on an error of state law unless the state law violation renders the trial fundamentally unfair in violation of due process**.** ***Estelle vs. McGuire***, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

In the present case, Petitioner's counsel informed the trial judge that she intended to raise the defense of entrapment with respect to the counts involving the possession of firearms. [Tr. at 229-230]. The trial court's response was as follows:

> THE COURT: In order to assert a defense of entrapment, must not the defendant admit the commissions of the crimes?
>
> MS. PAOLINO: Yes, your Honor.

> THE COURT: Is Mr. Verrecchia prepared to do that and say but I was led down this path by someone else?
>
> MS. PAOLINO: Well, the defense of entrapment is kind of tricky.
>
> THE COURT: You better believe it's tricky, and that's why I'm asking the question. Is Mr. Verrecchia, at least my understanding of entrapment requires that the defendant say I did it. I did all that you're saying I did, however, I had no prior criminal intent to do something, and but for the motivation, but for the actions of some other person, I would not have done it. And I only did it because some nefarious, low-living law enforcement person got me to do it. [Tr. at 230].

The position of the trial judge is contrary to and an unreasonable application of ***Mathews vs. United States***, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) which held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."

The trial judge's position that Petitioner could not claim entrapment without admitting all elements of the offense behavior was not only incorrect but also it derailed the defense theory of the case, denying Petitioner a fundamentally fair trial in violation of the due process clause.

**IV. THE DISTRICT COURT'S POSITION THAT THE AEDPA SUPERSEDED TOWNSEND AND FORECLOSES A HEARING WHERE THE PETITIONER HAD THE OPPORTUNITY TO DEVELOP THE CLAIM IN THE STATE COURT BUT FAILED TO DO SO SHOULD BE REVISITED**

In making the decision to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas applicant to prove the petition's factual allegations which, if true, would entitle the applicant to federal habeas relief. ***Schriro v. Landrigan***, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

When evaluating a state's motion to dismiss, the court must apply the standards governing motions to dismiss under Rule 12(b)(6) F.R.Civ.P. ***Walker v. True***, 399 F3d 315, 319 note 1 (4th Cir. 2005). Accordingly, all well-pleaded factual allegations must be taken as true, and all reasonable inferences from the facts pled must be drawn in Petitioner's favor.

"A petitioner who has diligently pursued his habeas corpus claim in state court is entitled to an evidentiary hearing on facts not previously developed in the state court proceedings, if the facts alleged would entitle him to relief, and if he satisfies one of the six factors enumerated by the Supreme Court in ***Townsend v. Sain***, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)" ***Conaway vs. Polk***, 453 F3d 567, 582 (4th Cir. 2006).

The six ***Townsend*** factors, one of which must be satisfied in order to obtain an evidentiary hearing in a federal habeas corpus proceeding, are as follows: (1) the merits of the factual dispute were not resolved in the state proceeding; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or, (6) for any reason it appears that the trier of fact did not afford the habeas applicant a full and fair fact hearing. ***Townsend***, 372 U.S. at 313. ***Conaway vs. Polk***, 453 F3d 567, 582 (4th Cir. 2006).

Turning to this case, the facts, taken in the light most favorable to the Petitioner, with all inferences drawn in favor of the Petitioner, the following three ***Townsend*** factors are present: (1) the state factual determination is not supported by the record, (2) the fact finding procedure employed by the state was not adequate, and (3) the material facts were not developed at a state court hearing.

The "record" is inadequate to support the conclusion that "Verrecchia through his own acts, of his own volition, had taken numerous steps which impeded the ability of this matter to proceed to trial." The record is inadequate to support the conclusion that "it (the state) was not primarily responsible for causing the long delays in the case."

Paradoxically, what the record indicates is that the State caused the delay by not satisfying its discovery obligations until the day of the trial. [See Exhibits A, B and C to motion to expand record and transcript of hearing dated January 20, 1999, morning session, at page 220-230 where the parties argue the motion to dismiss for failure to provide discovery].

There is no evidence that "Verrecchia himself was largely responsible for the delay in his trial." There is no evidence that the delay was caused by Verrecchia "churning through the various attorneys who represented him." The initial motion to dismiss for prejudicial pretrial delay was filed months before the allegation that "churning" of attorneys caused or contributed to the delay. Furthermore, there is no evidence of a relationship between the unreasonable pretrial delay and the alleged churning of attorneys.[5]

Given the sequence of events recounted by the trial judge, which was not based on independent evidence, it seems relatively clear that the decisions of the trial judge and

the decision of the highest state court were based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings." ***McCambridge vs. Hall***, 303 F3d 24, 36 (1st Cir. 2002)[Unreasonable is some increment of incorrectness beyond error]. A state court decision is "unreasonable" if it is devoid of a record or is arbitrary. ***Id.*** at 36.

In the case at bar, the decision of the trial court and the decision of the Rhode Island Supreme Court are arbitrary, capricious and whimsical because they are devoid of evidentiary support in the record. Lack of support in the record equates with decisions that are "unreasonable." The record indicates Mr. Verrecchia was obsessed with having a speedy trial. So much so that Mr. Verrecchia fired Ms. Caron when she tried to persuade him to waive the right to a speedy trial. There was nothing wrong with this decision, which was made eighteen (18) months after the date of arrest. The record indicates Mr. Verrecchia was satisfied with the services of Mr. Nugent, and not very pleased when Mr. Nugent, who had his own life to get on with, chose to leave private practice on or about August 7, 1997, or approximately fifteen (15) months after the date of arrest.

The trial court's decision and the Rhode Island Supreme Court's ["RISC"] decision that Mr. Verrecchia took numerous steps to impede a speedy trial is arbitrary, capricious and unreasonable because it lacks support in the record.

Likewise, the RISC's position that there was no specific showing of prejudice is not supported by the record. The record indicates Mr. Verrecchia called the trial court's attention to the loss of several alibi witnesses including but not limited to Mrs. Josephine Verrecchia, who passed on during the time the trial was being delayed by state action or inaction [Tr. 54], Frank Kizer, who passed on during the time the trial was delayed by

state action or inaction [Tr. 55]. Debbie Verrecchia, who suffered a brain aneurism during the time the trial was delayed by state action or inaction. [Tr. 55]. The prejudice from the loss of these three witnesses was explained on pages 54-59 of the transcript. There were other witnesses identified at pretrial hearings, and other witnesses that could not be identified until the State provided discovery regarding the dates, and times of the criminal activity. Furthermore, the RISC's treatment of the prejudice component is unreasonable because it is contrary to the "presumption of prejudice" attached to the lengthy pretrial delay.

The Court should grant liberal discovery and an evidentiary hearing to flesh out the claims presented in the habeas petition.

**VI. THE STATE SYSTEM'S RULING ON THE SPEEDY TRIAL CLAIM WAS UNREASONABLE**

The Sixth Amendment to the Constitution of the United States guarantees the right to a speedy and public trial. The right to a speedy trial is a "fundamental right" that applies to the states through the Fourteenth Amendment. ***Klopfer vs. North Carolina***, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)["We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment."].

In ***Barker vs. Wingo***, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court articulated four factors that must be considered in determining whether the right to a speedy trial has been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant sustained prejudice. No one of the factors constitutes "a necessary or sufficient condition to the finding of a deprivation of

the right to a speedy trial. ***Barker***, 407 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." ***Id.***

***1. The length of the delay***

The length of the delay is the threshold requirement. If the length of the delay is not uncommonly long, then judicial examination comes to an end. ***Doggett vs. United States***, 505 U.S. 647, 652, 120 L. Ed. 2d 520, 112 S.Ct. 2686 (1992). The length of the delay is measured from the date of arrest or the date of indictment, whichever comes first. ***United States vs. Marion***, 404 U.S. 307, 320, 30 L.Ed.2d 468, 92 S.Ct. 455 (1971). A delay approaching twelve (12) months is presumptively prejudicial, and triggers application of the remaining three factors. ***Doggett,*** 505 U.S. at 652, note 1.

Here, the Petitioner suffered an uncommonly long delay of approximately 15 months measured from the date of arrest to the date Mr. Nugent left the case, and a delay of 32 months of commencement of the trial. Notably, ***State vs. Verrecchia***, 766 A2d 377, 385 incorrectly measures the delay from date of indictment to date of commencement of trial, which shortens the delay by three (3) months. The State court system did not address the 15 month delay which also was presumptively prejudicial.

***2. Reasons for the delay***

The second factor to be considered is the reason for the delay. In considering this factor, some reasons carry more weight than others. For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the state while more neutral reasons weigh against the state less heavily. The purpose of the inquiry is to allocate blame for the delay. ***Doggett***, 505 U.S. at 651.

The trial judge ruled that Mr. Verrecchia was "responsible, either through his own

actions or through the actions of his attorneys *** [for] almost [all], if not all, of the delay." The trial judge did not cite the facts supporting this conclusion. Remarkably, the RISC adopted the position of the trial judge even though it is not supported by the record, which indicates the state made repeated motions for continuances, and did not timely produce discovery until the day of trial. Furthermore, the record indicates the Petitioner made repeated demands for a speedy and public trial. The trial judge's findings to the contrary are arbitrary, capricious and whimsical. Likewise, the appellate court's findings to the contrary are unreasonable. [See transcript dated January 20, 1999, page 215 [failure to produce fingerprint evidence or lack thereof], 220-229 [failure to produce tape recorded evidence] for a sample of defense counsel's complaints about the State's failure to comply with discovery orders.]. The record shows that Mr. Verrecchia had several attorneys, but it does not show that the turnover was attributable to the actions of Mr. Verrecchia, nor does it support the claim that the delay was caused by the turnover. Whatever the case, Mr. Verrecchia was not responsible for the sequence of changes in counsel. At a point in time after the presumption of prejudice from pretrial delay attached, Mr. Nugent, Mr. Verrecchia's primary attorney, resigned to take the job as the Federal Defender.

The finding that Mr. Verrecchia was responsible for almost all of the delay should be swiftly rejected because it is not supported by the record and is, therefore, unreasonable. Furthermore, the finding also should be rejected because the presumption of prejudice from the speedy trial violation attached before alleged "churning" of attorneys took place.

***3. Petitioner's assertion of his speedy trial rights***

The third factor is the defendant's assertion of his speedy trial rights. A "defendant's assertion of his speedy trial right…is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right." ***Barker,*** 407 U.S. at 531-32. Even a request for bail is the functional equivalent of a request for a speedy trial. ***Cain vs. Smith***, 686 F2d 374, 384 (6th Cir. 1982). Petitioner made a request for bail. He proclaimed his innocence. Besides the request for bail, Petitioner made several motions for a speedy trial. The repeated requests for a speedy trial undercuts the theory that Mr. Verrecchia was changing lawyers to delay the trial.

***4. Prejudice***

The fourth factor is prejudice. The Supreme Court has stated that the accused need not point to "affirmative proof of particularized prejudice." in every case. ***Doggett vs. United States***, 505 U.S. 647, 655, 120 L.Ed.2d 520, 112 S.Ct. 2686 (1992). Rather, the Court stated, **"we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify**." ***Id.***

The Supreme Court has identified three areas a court should consider when determining prejudice in speedy trial cases: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; (3) the possibility the defense will be impaired. ***Barker***, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of the defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." But see ***Doggett*** at 505 U.S. 659-662 stating that the liberty interests--not impairment of the defense--is at the core of the right to a speedy trial.

In this case, Mr. Verrecchia suffered two forms of prejudice. First, Petitioner suffered anxiety and concern as a result of the State's failure to afford him a speedy trial. Second, the case against Petitioner was constructed around the testimony on Michael Rossi, who stated under oath that Mr. Verrecchia accompanied him when he committed certain burglaries and robberies on specific dates and at specific times. Mr. Verrecchia claimed that he was having dinner with his mother at the same time Mr. Rossi had him committing crimes. Accordingly, had the State afforded Mr. Verrecchia the speedy trial to which he was entitled under the Constitution, Mr. Verrecchia would have had an alibi for much of the criminal activity attributed to him by Mr. Rossi.

In sum, the State appellate court's findings of fact are arbitrary, capricious and whimsical. The State never addressed the initial delay of 15 months nor did it address Mr. Nugent's repeated requests for a speedy trial, and his requests for dismissal for failure to give Mr. Verrecchia a speedy trial. The total delay of 32 months measured from the date of arrest to the date of commencement of the trial was attributable to the state's failure to provide discovery. The violation of the right to a speedy trial occurred before the changes in counsel so the state court's treatment of the speedy trial act claim was unreasonable. The Petitioner repeatedly requested a speedy and public trial. The delay caused Petitioner anxiety and concern about his fate, and denied Petitioner any realistic chance of marshalling alibi witnesses, who died over the 32 months the case was inactive.

The record does not support the conclusions reached by the state court system. The delay was presumptively prejudicial once the delay was longer than 8 months, 22 days. At this point in time, there had been no alleged "churning" of attorneys. The delay was attributable to the failure on the part of the state to comply with discovery rules.

Ultimately, the record does not support the claim that the delay of 32 months was attributable to Verrecchia. Instead, the record indicates the delay was attributable to the state's failure to provide discovery. According to the RISC, the churning of attorneys caused the delay. The record, however, indicates the delay was so long that a change of attorneys was almost inevitable.

The State's treatment of the claim--and the Magistrate-Judge's treatment of the claim-- attach absolutely no significance to the presumption of prejudice that is supposed to attach to a delay of 32 months or, for that matter, a delay of 15 months.

**VII. CONCLUSION**

The State should be required to produce the transcripts of each and every hearing directly or tangentially involved in the pretrial delay. In addition, it should be required to produce a complete set of trial transcripts. The state should be required to produce every scrap of evidence supporting the argument that it was Mr. Verrecchia who was primarily responsible for the pretrial delay. The Petitioner should be granted leave to submit interrogatories to Mr. Nugent, who is now a Superior Court Judge.

/s/Cheryl J. Sturm
Cheryl J. Sturm
Attorney-At-Law
387 Ring Road

Chadds Ford, PA 19317
484/771-2000

/s/S.Paul Ryan

S. Paul Ryan
Attorney at Law
Bar ID #2264
670 Willett Avenue
East Providence, R.I. 02915
401-437-0660

**CERTIFICATION**

Pursuant to AP10 of this Court, effective August, 2006, I hereby certify that on the 27th day of September, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney of record:

Virginia M. McGinn
Department of Attorney General
vmcginn@riag.ri.gov

/s/S. Paul Ryan