IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALBERT VERRECCHIA, | : CTA1 No. 07-2717 |
| Petitioner-Appellant | : DRI No. 1:06-496S-LDA |
| | : |
| v. | : |
| | : |
| JAMES WEEDEN, Warden, ACI, | : |
| PATRICK LYNCH, Attorney General, State of Rhode Island, | : |
| Respondents/Appellees | : |

**APPLICATION FOR CERTIFICATE OF APPEALABILITY**

**ALBERT VERRECCHIA** hereby submits the following as his application for certificate of appealability (hereinafter abbreviated "COA").

**STANDARDS FOR GRANTING A COA**

28 U.S.C. 2253(c)(1) reads, in pertinent part, as follows:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or (B) the final order in a proceeding under section 2255.

28 U.S.C. 2253(c)(2) reads, in pertinent part, as follows:

> A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

***Miller-El vs. Cockrell***, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), which set standards for issuance of a COA, reads, in pertinent part, as follows:

> The COA determination under 2253(c) requires an overview of the claims in the habeas corpus petition and the general assessment of their merits. We look to the district court's application of the AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. **This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.**
>
> To that end, our opinion in ***Slack***[1] held that a COA does not require a

---

[1] ***Slack vs. McDaniel***, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) defines the standard as follows:

> We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching a prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in it's procedural ruling. 529 U.S. at 482, 120 S.Ct. at 603

Where, as here, the petitioner alleges the district court erred by failing to hold an evidentiary hearing on a 2254 habeas corpus petition, the certificate of appealability must show "the soundness of the procedural ruling is debatable, and that the underlying constitutional claim is also colorable." ***In re: William Smith***, 436 F3d 9 (1st Cir. 2006).

> showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in ***Slack*** would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "has already failed in that endeavor." ***Barefoot***, supra at 893, n. 4.

## THE PROCEDURAL ERROR

In the present case, the district court committed a procedural error when it failed to hold an evidentiary hearing on the claim that the Rhode Island Supreme Court's [hereinafter abbreviated "RISC"] determination was not supported by the record, and therefore, was arbitrary, capricious and unreasonable. The underlying constitutional claim is subdivided into two claims. First, the RISC's adverse ruling on the violation of the constitutional right to a speedy trial was either contrary to and/or an unreasonable application of the Supreme Court's ruling in ***Barker v. Wingo***, 407 U.S. 514, 530-33, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), which established a four-part-balancing-test for evaluating a claim of a Sixth Amendment violation of the right to a speedy trial. [2]

---

[2] Discovery and an evidentiary hearing should have been held on the following substantive "claims": (1) the RISC's decision was contrary to and/or an unreasonable application of clearly established federal law set forth in ***Barker v. Wingo***, 407 U.S. 514, 530-33, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), which established a four-part-balancing-test to be used in determining whether an individual's Sixth Amendment right to a speedy trial has been violated. The court should consider (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his speedy trial rights, and (4) the prejudice factor. The Supreme Court has stated that a delay approaching one year is "presumptively prejudicial." ***Doggett v. United States***, 505 U.S. 647, 652 n. 1, 120 L.Ed.2d 520, 112 S.Ct. 2686 (1992), and (2) the RISC's decision was contrary to and/or an unreasonable application of clearly established Supreme Court decision in ***United States v. MacDonald***, 456 U.S. 1, 6-7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), which measures the delay from date of arrest, and not the date of indictment. <u>Significantly</u>, the Rhode Island Supreme Court's ["RISC"] decision in ***State v. Verrecchia***, 766 A2d 377,

Second, the RISC's adverse ruling was contrary to and/or an unreasonable application of ***United States v. MacDonald***, 456 U.S. 1, 6-7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), which measures the delay from date of arrest, or indictment, whichever occurs first, and not the date of indictment. ***United States v. Benigno-Santiago***, 130 F3d 11, 25 (1st Cir. 1997). Finally, the RISC's adverse ruling is contrary to and/or ***Mathews vs. United States***, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), which held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."

As a matter of procedural due process, the district court has discretion to hold or not hold an evidentiary hearing. Even so, the discretion is not unlimited. "A petitioner who has diligently pursued his habeas corpus claim in state court is entitled to an evidentiary hearing on facts not previously developed in the state court proceedings, if the facts alleged would entitle him to relief, and if he satisfies one of the six factors enumerated by the Supreme Court in ***Townsend v. Sain***, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)" ***Conaway vs. Polk***, 453 F3d 567, 582 (4th Cir. 2006).

The district court's "discretion" is cabined by the six ***Townsend*** factors, one of which must be satisfied in order to obtain an evidentiary hearing in a federal habeas corpus proceeding, are as follows: (1) the merits of the factual dispute were not resolved in the state proceeding; (2) the state factual determination is not fairly supported by the

---

385 <u>incorrectly</u> measures the delay from date of indictment to date of commencement of trial, which changes the time-line for the constitutional analysis. Because the error shrinks the delay by three (3) months, it minimizes and ultimately eliminates from the RISC's analysis the presumptively prejudicial 15 month delay between arrest and the departure of Attorney Nugent, which occurred long before the churning of attorneys.

record as a whole; (3) the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or, (6) for any reason it appears that the trier of fact did not afford the habeas applicant a full and fair fact hearing. ***Townsend***, 372 U.S. at 313. ***Conaway vs. Polk***, 453 F3d 567, 582 (4th Cir. 2006).

Turning to this case, the facts indicate the presence of the following three ***Townsend*** factors: (1) the state factual determination is not supported by the record, (2) the fact finding procedure employed by the state was not adequate, and (3) the material facts were not developed at a state court hearing.

Here, the State's "record" is woefully insufficient to support the bald conclusion that "Verrecchia through his own acts, of his own volition, had taken numerous steps which impeded the ability of this matter to proceed to trial." The record also is inadequate to support the bald conclusion that "it (the State) was not primarily responsible for causing the long delays in the case."

Here, the record shows a "presumptively prejudicial" Sixth Amendment violation before the alleged churning of attorneys. The record shows the error was caused by the RISC's failure to accept the fact that the "right attaches upon indictment or arrest, whichever occurs first." ***Santiago-Becerril***, ***supra***, at 26.

**THE DISTRICT COURT COMMITTED PROCEDURAL ERROR WHEN IT DID NOT REQUIRE THE STATE TO COMPLY WITH THE PROVISIONS OF RULE 5 OF THE RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURT AND THE FAILURE TO COMPLY IS NOT HARMLESS ERROR**

Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts reads, in pertinent part, as follows:

**Rule 5. The Answer and the Reply**

> **(a) When Required.** The respondent is not required to answer the petition unless a judge so orders.
>
> **(b) Contents: Addressing the Allegations; Stating a Bar.** The answer must address the allegations in the petition. In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity or a statute of limitations.
>
> **(c) Contents: Transcripts.** The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed. The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.
>
> **(d) Contents: Briefs on Appeal and Opinions**. The **respondent must** also file with the answer a copy of:
>
> (1) any brief the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post conviction proceeding;
>
> (2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and
>
> (3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.
>
> **(e) Reply**. The petitioner may submit a reply to the respondent's answer or other pleading within a time fixed by the judge.

An complete and accurate record is essential to just disposition of any claim but it is especially essential to the just resolution of a fact-intensive-claim that the State violated the Sixth Amendment right to a speedy trial because the reasons for the delay are

the "focal inquiry" of the analysis. ***Santiago-Becerril, supra*** at page 29. A complete and accurate record is essential to determine whether the State's violation of mandatory discovery rules was the real reason for the presumptively prejudicial pretrial delay.

Notably, a statement of facts is valueless unless it is independently documented by a record. ***Baker v. Horn***, 383 F.Supp 2d. 720 (EDPA 2005), ***Baker v. Horn III***, 210 F.Supp2d at 628. ***Rolan v. Vaughn***, 445 F3d 671, 681 (3d Cir. 2006).

Turning back to this case, the few facts that can be verified by the record are as follows.

On May 9, 1996, Mr. Verrecchia was arrested by the Rhode Island State Police, an event triggering the right to a speedy trial. ***United States v. MacDonald***, 456 U.S. 1, 6-7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), ***United States v. Munoz-Franco***, 487 F3d 25, 60-61 (1st Cir. 2007), ***Santiago-Becerril, supra*** at 26.

On July 24, 1996, the indictment was returned. The same day, Mr. Verrecchia was arraigned and ordered held without bail.

On August 7, 1996, Attorney DeSimone entered his appearance, and he continued to represent Mr. Verrecchia through September 4, 1996, the date of the bail hearing.

On September 16, 1996, Mr. Verrecchia filed a pro-se motion for appointment of counsel indicating he was indigent and could no longer retain Mr. DeSimone as his private counsel.

On October 18, 1996, the trial court appointed Attorney Charles Rodgers to represent Mr. Verrecchia. There is no indication of a causal connection between the change of attorneys and any pretrial delay.

On October 21, 1996, the case was scheduled for a pretrial conference, and continued to November 13, 1996. The Clerk made the notation "PFI" which means pending further investigation. The record does not indicate who made the request for the continuance.

On November 7, 1996, the trial court granted Mr. Rodgers' motion to withdraw for health reasons and it appointed Attorney Steven Nugent, then an attorney in private practice and now a Rhode Island Superior Court Judge. There is no indication of a relationship between the change of attorneys and the pretrial delay.

On November 15, 1996, Mr. Nugent filed a motion for discovery and inspection of documents. On November 25, 1996, the motion for discovery and inspection was granted.

On November 25, 1996, Mr. Verrecchia filed a motion for a speedy trial. This "was, using the words contained in the Supreme Court decision, the first knock on the door of Mr. Verrecchia asserting his Constitutional Right to a speedy trial." (Six months, sixteen days after date of arrest).

On December 4, 1996, the matter was continued until January 22, 1997 pending further investigation. The record does not indicate which party requested the continuance. However, there is a strong inference that it was not Mr. Verrecchia who made the request because Mr. Nugent filed a motion to dismiss the indictment based on the prosecution's failure to provide discovery in compliance with the trial court's order dated November 25, 1996. Mr. Nugent stated, "The defendant has not contributed to any delay, and the state's failure to comply with the mandatory discovery provisions of Rhode Island Superior court Rule of Criminal Procedure 16 and this court's order granting the defendant's

motion to compel has prejudiced the defendant in that he has not been able to prepare a defense and to adequately prepare for trial." [See Exhibit "A" to petitioner's motion to expand the record].

On January 17, 1997, the trial judge held a conference. The matter was continued pending further investigation. The record does not indicate which party requested the continuance.

On January 31, 1997, the trial court set bail at $50,000.00 with surety, but Mr. Verrecchia remained in jail.

On January 31, 1997, the trial court denied the motion to dismiss the indictment for failure to hold a speedy trial. (Eight months, 22 days after the date of arrest).[3] The record does not indicate why the motion was denied.

On February 8, 1997, the trial court (Gemma, J.) ordered the State to satisfy discovery obligations within 72 hours. [Exhibit C to motion to expand record].

On February 10, 1997, Mr. Verrecchia, acting pro-se, filed a petition for habeas corpus seeking "Discharge of defendant illegally incarcerated." The petition was scheduled for February 17, 1997, and continued to February 19, 1997. Meanwhile, Mr. Nugent filed a motion to review Mr. Verrecchia's bail.

On February 28, 1997, the trial court denied Mr. Verrecchia's habeas corpus petition. (Nine months, 19 days). The matter was continued until March 7, 1997. The record does not indicate which party requested the continuance. The record does not indicate which party requested the continuance.

---

[3] The Court refused to revisit this order on the grounds that it was "the law of the case." [Tr. 116].

On March 7, 1997, the matter was "passed for trial." The record does not indicate why the matter was passed for trial.

On April 21, 1997, Mr. Nugent obtained authorization to obtain a private investigator. (Eleven months, 12 days).

On May 1, 1997, Mr. Nugent filed numerous motions, including a motion to preclude certain witnesses from testifying, another motion alleging discovery violations, a motion to disclose other crimes which the State would introduce at trial, a motion for exculpatory evidence. The same day, Mr. Nugent filed a motion for a continuance from the trial date of May 12, 1997. The same day, Mr. Nugent listed Mr. Verrecchia's alibi witnesses as Robert Marro, Sr., Robert Marro, Jr., and Dessirie Boisse. Mr. Verrecchia further stated that he was unable to identify all alibi witnesses until the State provided him with the date and time of the alleged offenses. [Tr. 118].

On May 8, 1997, Mr. Nugent filed a motion to dismiss the indictment for failure to hold a speedy trial.[4] In June, 1997, several months after the State had been ordered to produce discovery, the State provided Mr. Nugent with certain bail hearing transcripts and a tape of a conversation that supposedly took place between Mr. Verrecchia and Sergeant O'Donnell of the Rhode Island State Police on May 9, 1996. During the month of June, 1997, the trial court held more status conferences.

On August 5, 1997, Mr. Nugent filed a motion to withdraw as counsel, for personal reasons totally unrelated to Mr. Verrecchia.[5](One year, two months, 27 days).

On August 13, 1997, the trial court appointed another lawyer. On August 27, 1997, Robert Watt entered his appearance. (One year, three months, four days).

---

[4] By this time, Mr. Verrecchia's pretrial incarceration approached one year and was "presumptively prejudicial."

[5] Mr. Nugent became the head of the Federal Defender's Office.

On September 9, 1997, the matter was scheduled for trial on November 24, 1997. (One year, five months, fifteen days).

In November, 1997, Mr. Verrecchia requested trial transcripts of ***State vs. Acciardo***. He also requested certain records relating to the informant, Michael Rossi. The motions were heard on November 26, 1997 and continued over until December 8, 1997. (One year, six months thirty days).

On December 9, 1997, Mr. Watt filed a motion for pretrial relief including the transcript of Mr. Rossi's testimony at the Acciardo trial. The motion was continued on December 16, 1997. On that date, Mr. Watt asked for a continuance. This request for continuance was contrary to Mr. Verrecchia's wishes for a speedy trial, and it caused Verrecchia to file a motion to appoint new counsel on December 24, 1997. (One year, seven months, 15 days). Mr. Watt continued to represent Mr. Verrecchia until January 26, 1998, when he was granted permission to withdraw.

The trial court appointed Edward Roy. On April 16, 1998, the trial court heard Mr. Verrecchia's motion for a speedy trial. On April 16, 1998, the matter was scheduled for trial on May 11, 1998 (Two years, three days after arrest). On May 11, 1998, Mr. Verrecchia filed a motion to replace Mr. Roy on the grounds that Mr. Roy made sexual advances to Mr. Verrecchia during a legal visit.

The trial court appointed Attorney Therese Caron to represent Mr. Verrecchia. She entered her appearance on May 26, 1998. On June 16, 1998, Ms. Caron and Mr. Verrecchia attended a status conference. The matter was continued until September 9, 1998, when it was continued again until November 9, 1998. The record does not indicate which party requested the continuance. On November 2, 1998, Mr. Verrecchia filed a

motion to release Ms. Caron because she was trying to persuade him to sign a waiver of the right to a speedy trial. On November 9, 1998, the trial court released Ms. Caron, "granted" the third motion for a speedy trial, and continued the matter for a determination of Mr. Verrecchia's continued indigency. [Tr. 124].

On December 15, 1998, the trial court determined that Mr. Verrecchia was not eligible for the services of a Public Defender.

On January 4, 1999, Ms. Paolino entered her appearance. On January 4, 1999, the State requested a continuance. On January 7, 1999, the State requested another continuance. On January 12, 1999, the State requested another continuance. [See Trial Transcript pages 57-125].

In the case at bar, there is no record to support the RISC's decision denying the speedy trial act claim. Lack of support in the record makes the decision "unreasonable." Given the absence of a record establishing the reasons for the various continuances, there is no rational basis for the decision.

If the reasons for the delay are the "focal inquiry" of the ***Barker*** analysis, then the RISC's decision is unreasonable because it is not supported by the record. ***United States v. Munoz-Franco***, 487 F3d 25 (1st Cir. 2007). In the present case, there is no record establishing the reasons for the presumptively prejudicial 15-month-delay (between arrest and the departure of Attorney Nugent) or the 32 month delay between arrest and commencement of trial.

Absent a record, it is a fact from which there really is no escape that the adverse decision of the trial judge and the decision of the RISC ratifying the decision of the trial judge are based on an "unreasonable determination of the facts in light of the evidence

presented in the State court proceedings." ***McCambridge vs. Hall***, 303 F3d 24, 36 (1st Cir. 2002)[Unreasonable is some increment of incorrectness beyond error]. A state court decision is "unreasonable" if it is devoid of a record or is arbitrary. ***Id.*** at 36.

Significantly, the RISC's decision in ***State v. Verrecchia***, 766 A2d 377, 385 incorrectly measures the delay from the date of the indictment whereas it should measure the delay from the date of arrest. This legal error shortens the delay by three (3) months. There is a reasonable likelihood this legal error accounts for why the RISC did not address the presumptively prejudicial 15 month delay between the date of arrest and the departure of Mr. Nugent. The RISC appears to have overlooked the record such as it is indicating that Mr. Verrecchia was in State custody for approximately fifteen (15) months between date of arrest and the departure of Mr. Nugent as a result of the State's failure to satisfy its mandatory discovery obligations. Significantly, during that period, Mr. Verrecchia made repeated demands for a speedy trial.

Mr. Nugent's letter indicates Mr. Verrecchia did nothing to impede a speedy trial, and indicates the delay was attributable to the State's failure to comply with mandatory discovery obligations. [Exhibit "A" to motion to expand the record].

The RISC totally overlooked the initial 15 month speedy trial violation between date of arrest and the departure of Nugent. The RISC's opinion leaves this presumptively prejudicial delay totally unexplained.

The record indicates Mr. Verrecchia was pleased with the services of Mr. Nugent, and not very pleased when Mr. Nugent chose to leave private practice on or about August 7, 1997, or approximately fifteen (15) months after the date of arrest. The State court system's bald conclusion that Mr. Verrecchia took numerous steps to impede a speedy

trial ignores the time-line between late of arrest and the departure of Mr. Nugent, and is otherwise arbitrary, capricious and unreasonable.

Likewise, the RISC's position that there was no specific showing of prejudice ignores the "presumption of prejudice, and is otherwise not supported by the record.

With respect to the presumptively prejudicial of the Sixth Amendment right to a speedy trial which occurred between the date of arrest and the date Mr. Nugent exited the case--a delay which the RISC never addresses--Mr. Nugent's letter attributes the delay to the State's failure to comply with mandatory discovery rules.

With respect to the Sixth Amendment violations that occurred subsequently, the record indicates Mr. Verrecchia called the trial court's attention to the loss of several alibi witnesses including but not limited to Mrs. Josephine Verrecchia, Frank Kizer, and Debbie Verrecchia. [Tr. 54-55].

Besides the three witnesses described above, there were other witnesses identified at pretrial hearings, and other witnesses that could not be identified until the State satisfied its mandatory discovery obligations and provided the dates, and times of the criminal activity. [Tr. 54-59].

The district court erred when it did not order the State to comply with Rule 5 and provide the official transcripts, which would establish the decision of the trial judge and the decision of the RISC are not supported by the record, and therefore, are unreasonable.

The district court erred when it failed to grant Petitioner leave to propound interrogatories to now Superior Court Judge Nugent, the person in the best position to

explain what induced him to file the motion to dismiss for discovery violations, and what caused him to file the motion to dismiss for failure to give Mr. Verrecchia a speedy trial.

**THE REFUSAL TO GIVE AN ENTRAPMENT INSTRUCTION WAS AN UNREASONABLE APPLICATION OF FEDERAL LAW**

It is well-established that federal habeas corpus will not be granted based on an error of state law unless the state law violation renders the trial fundamentally unfair in violation of due process**.** ***Estelle vs. McGuire***, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

In the present case, Petitioner's trial counsel informed the trial judge that she intended to raise the defense of entrapment with respect to the counts involving the possession of firearms. [Tr. at 229-230].

The trial court's response was as follows:

> THE COURT: In order to assert a defense of entrapment, must not the defendant admit the commissions of the crimes?
>
> MS. PAOLINO: Yes, your Honor.
>
> THE COURT: Is Mr. Verrecchia prepared to do that and say but I was led down this path by someone else?
>
> MS. PAOLINO: Well, the defense of entrapment is kind of tricky.
>
> THE COURT: You better believe it's tricky, and that's why I'm asking the question. Is Mr. Verrecchia, at least my understanding of entrapment requires that the defendant say I did it. I did all that you're saying I did, however, I had no prior criminal intent to do something, and but for the motivation, but for the actions of some other person, I would not have

> done it. And I only did it because some nefarious, low-living law enforcement person got me to do it. [Tr. at 230].

The position of the trial judge is contrary to and an unreasonable application of ***Mathews vs. United States***, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), which held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."

The trial judge's position that Petitioner could not claim entrapment without admitting all elements of the offense behavior was not merely incorrect but also contrary to and/or an unreasonable application of clearly established law ordained by a holding of the United States Supreme Court.

The unreasonable ruling caused the defense attorney to abandon the entrapment defense, which denied Petitioner a fundamentally fair trial in violation of the due process clause.

**THE DISTRICT COURT'S POSITION THAT THE AEDPA SUPERSEDED TOWNSEND AND FORECLOSES AN EVIDENTIARY HEARING WHERE THE PETITIONER HAD THE OPPORTUNITY TO DEVELOP THE CLAIM IS CONTRARY TO SUPREME COURT PRECEDENT**

In making the decision to grant an evidentiary hearing, a federal court must consider whether such An evidentiary hearing could enable the habeas applicant to prove the petition's factual allegations which, if true, would entitle the applicant to federal habeas relief. ***Schriro v. Landrigan***, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

When evaluating a state's motion to dismiss, the court must apply the standards governing motions to dismiss under Rule 12(b)(6) F.R.Civ.P. ***Walker v. True***, 399 F3d

315, 319 note 1 (4th Cir. 2005). Accordingly, all well-pleaded factual allegations must be taken as true, and all reasonable inferences from the facts pled must be drawn in Petitioner's favor.

"A petitioner who has diligently pursued his habeas corpus claim in state court is entitled to an evidentiary hearing on facts not previously developed in the state court proceedings, if the facts alleged would entitle him to relief, and if he satisfies one of the six factors enumerated by the Supreme Court in ***Townsend v. Sain***, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)" ***Conaway vs. Polk***, 453 F3d 567, 582 (4th Cir. 2006).

The six ***Townsend*** factors, one of which must be satisfied in order to obtain an evidentiary hearing in a federal habeas corpus proceeding, are as follows: (1) the merits of the factual dispute were not resolved in the state proceeding; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or, (6) for any reason it appears that the trier of fact did not afford the habeas applicant a full and fair fact hearing. ***Townsend***, 372 U.S. at 313. ***Conaway vs. Polk***, 453 F3d 567, 582 (4th Cir. 2006).

Turning to this case, the facts, taken in the light most favorable to the Petitioner, with all inferences drawn in favor of the Petitioner, the following three ***Townsend*** factors are present: (1) the state factual determination is not supported by the record, (2) the fact finding procedure employed by the state was not adequate, and (3) the material facts were not developed at a state court hearing.

The "record" is inadequate to support the bald conclusion that "Verrecchia through his own acts, of his own volition, had taken numerous steps which impeded the ability of this matter to proceed to trial." The record is inadequate to support the bald conclusion that "it (the state) was not primarily responsible for causing the long delays in the case."

Paradoxically, what the record indicates is that the State caused the presumptively prejudicial 15 month delay and it cause the 32 month delay by not satisfying its mandatory discovery obligations until the day of the trial. [See Exhibits A, B and C to motion to expand record and transcript of hearing dated January 20, 1999, morning session, at page 220-230 where the parties argue the motion to dismiss for failure to provide discovery].

There is no evidence supporting the bald conclusion that "Verrecchia himself was largely responsible for the delay in his trial." There is no evidence that the delay was caused by Verrecchia "churning through the various attorneys who represented him." The presumptively prejudicial 15 month delay between date of arrest and Mr. Nugent's departure occurred long before the alleged "churning" of attorneys. Furthermore, there is no evidence of a causal connection between the unreasonable pretrial delay and the alleged churning of attorneys.[6]

Given the absence of a record, the decisions of the trial judge and the decision of the RISC were based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings." ***McCambridge vs. Hall***, 303 F3d 24, 36 (1st Cir. 2002)[Unreasonable is some increment of incorrectness beyond error]. A state court decision is "unreasonable" if it is devoid of a record or is arbitrary. ***Id.*** at 36.

In the case at bar, the decision of the trial court and the decision of the RISC are devoid of evidentiary support in the record. Lack of support in the record equates with "unreasonable."

What record there is indicates Mr. Verrecchia was obsessed with having a speedy trial. So much so that Mr. Verrecchia fired Ms. Caron when she encouraged him to waive the right to a speedy trial.

The record indicates Mr. Verrecchia was satisfied with the services of Mr. Nugent, and not very pleased when Mr. Nugent chose to leave private practice on or about August 7, 1997, or approximately fifteen (15) months after the date of arrest.

At the risk of flogging the point, the trial court's decision and the Rhode Island Supreme Court's ["RISC"] decision that Mr. Verrecchia caused the delay is unreasonable because it lacks support in the record.

Likewise, the RISC's position that there was no specific showing of prejudice is not supported by the record. The record indicates Mr. Verrecchia called the trial court's attention to the loss of several alibi witnesses including but not limited to Mrs. Josephine Verrecchia, Frank Kizer, and Debbie Verrecchia, who suffered a brain aneurism during the delay. [Tr. 55]. A description of the prejudice from the loss of these three witnesses was set forth on pages 54-59 of the transcript.

There were other witnesses identified at pretrial hearings, and other witnesses that could not be identified until the State provided discovery regarding the dates, and times of the criminal activity. Last but not least, the RISC's treatment of the prejudice component is unreasonable because it is contrary to the "presumption of prejudice" attached to the presumptively prejudicial pretrial delay.

The district court erred when it failed to grant liberal discovery and an evidentiary hearing to develop the record necessary to a fair and just disposition of the Sixth Amendment speedy trial claims presented in the habeas petition.

**THE RISC'S RULING ON THE SPEEDY TRIAL CLAIM WAS AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW**

The Sixth Amendment to the Constitution of the United States guarantees the right to a speedy and public trial. The right to a speedy trial is a "fundamental right" that applies to the states through the Fourteenth Amendment. ***Klopfer vs. North Carolina***, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)["We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment."].

In ***Barker vs. Wingo***, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court articulated four factors that must be considered in determining whether the right to a speedy trial has been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant sustained prejudice. No one of the factors constitutes "a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. ***Barker***, 407 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." ***Id.***

***1. The length of the delay***

The length of the delay is the threshold requirement. ***United States v. Munoz-Franco***, 487 F3d 25 (1st Cir. 2007). The length of the delay triggers the presumption of prejudice. If the length of the delay is not uncommonly long, then judicial examination comes to an end. ***Doggett vs. United States***, 505 U.S. 647, 652, 120 L. Ed. 2d 520, 112

S.Ct. 2686 (1992). The length of the delay is measured from the date of arrest or the date of indictment, whichever comes first. ***United States vs. MacDonald***, 456 U.S. 1, 6-7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), ***Santiago-Becerri***, supra at 26, ***Munoz-Franco***, ***supra*** at page 60-61. A delay approaching twelve (12) months is presumptively prejudicial, and triggers application of the remaining three factors. ***Doggett,*** 505 U.S. at 652, note 1.

Here, the Petitioner suffered an uncommonly long delay of approximately 15 months measured from the date of arrest to the date Mr. Nugent left the case, and a delay of 32 months between arrest and commencement of the trial.

Significantly, the RISC's decision in ***State v. Verrecchia***, 766 A2d 377, 385 is contrary to and/or an unreasonable application of Supreme Court precedent because it measures the delay from date of indictment instead of the date of arrest. ***MacDonald, supra***. The RISC's decision was contrary to and/or an unreasonable application of Supreme Court precedent when it failed to address the presumptively prejudicial 15 month delay between arrest and Nugent's departure from the case. Finally, the RISC's decision regarding the 32 month delay is not based on the record, but instead is a bald conclusion based on conjecture.

***2. Reasons for the delay***

The second factor to be considered is the reason for the delay. This is the "focal inquiry." ***Munoz-Franco***, supra 60-61. In considering this factor, some reasons carry more weight than others. For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the state while more neutral reasons weigh against the state less heavily.

The purpose of this focal inquiry is to allocate blame for the delay. ***Doggett***, 505 U.S. at 651.

Here, the trial judge ruled that Mr. Verrecchia was "responsible, either through his own actions or through the actions of his attorneys *** [for] almost [all], if not all, of the delay." The trial judge did not cite the facts or the reasoning supporting this bald conclusion.

Remarkably, the RISC adopted the position of the trial judge even though it is contradicted by the record (such as it is) indicating the State made repeated motions for continuances, and did not timely produce discovery until the day of trial.

In stark contrast, the record such as it is indicates the Petitioner made repeated demands for a speedy and public trial, and even went so far as to fire attorneys who wanted continuances. The trial judge's findings to the contrary are arbitrary, capricious and whimsical. Likewise, the RISC's findings to the contrary are arbitrary, capricious, and unreasonable. [See transcript dated January 20, 1999, page 215 [failure to produce fingerprint evidence or lack thereof], 220-229 [failure to produce tape recorded evidence] for a sample of defense counsel's complaints about the State's failure to comply with discovery orders.].

The record shows that Mr. Verrecchia had several attorneys, but the record also shows the presumptively prejudicial delay occurred before the churning of the attorneys. The record does not show that the turnover was attributable to the actions of Mr. Verrecchia who fired the attorneys because he wanted a speedy trial and they wanted continuances, nor does it support the claim that the delay was attributable to the turnover.

At a point in time long after the presumption of prejudice from pretrial delay attached, Mr. Nugent, Mr. Verrecchia's primary attorney, resigned to take the job as the Federal Defender.

The finding that Mr. Verrecchia was responsible for almost all of the delay should be swiftly rejected because it is not supported by the record and is, therefore, unreasonable. The finding also should be rejected because the presumption of prejudice from the speedy trial violation attached before alleged "churning" of attorneys took place.

***3. Petitioner's assertion of his speedy trial rights***

The third factor is the defendant's assertion of his speedy trial rights. A "defendant's assertion of his speedy trial right…is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right." ***Barker,*** 407 U.S. at 531-32. Even a request for bail is the functional equivalent of a request for a speedy trial. ***Cain vs. Smith***, 686 F2d 374, 384 (6th Cir. 1982). Petitioner made a request for bail. He proclaimed his innocence. Besides the request for bail, Petitioner made several motions for a speedy trial. The repeated requests for a speedy trial undercuts the theory that Mr. Verrecchia was changing lawyers to delay the trial.

***4. Prejudice***

The fourth factor is prejudice. The Supreme Court has stated that the accused need not point to "affirmative proof of particularized prejudice." ***Doggett vs. United States***, 505 U.S. 647, 655, 120 L.Ed.2d 520, 112 S.Ct. 2686 (1992). Rather, the Court stated, **"we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify**." ***Id.***

The Supreme Court has identified three areas a court should consider when determining prejudice in speedy trial cases: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; (3) the possibility the defense will be impaired. ***Barker***, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of the defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." But see ***Doggett*** at 505 U.S. 659-662 stating that the liberty interests--not impairment of the defense--is at the core of the right to a speedy trial.

In this case, Mr. Verrecchia suffered two forms of prejudice. First, Petitioner suffered anxiety and concern as a result of the State's failure to afford him a speedy trial. Second, the case against Petitioner was constructed around the testimony on Michael Rossi, who stated under oath that Mr. Verrecchia accompanied him when he committed certain burglaries and robberies on specific dates, at specific times and at specific locations. Mr. Verrecchia claimed that he was having dinner with his mother at the same time Mr. Rossi had him committing crimes. Accordingly, had the State afforded Mr. Verrecchia the speedy trial to which he was entitled under the Constitution, Mr. Verrecchia would have had an alibi for much of the criminal activity attributed to him by Mr. Rossi.

In sum, the RISC's findings of fact are not supported by the record making them arbitrary, capricious and unreasonable. The RISC did not measure the delay from the date of arrest in violation of clearly established federal law. The RISC did address the initial delay of 15 months between date of arrest and departure of Mr. Nugent nor did it address

Mr. Nugent's repeated requests for a speedy trial, and his requests for dismissal for failure to give Mr. Verrecchia a speedy trial.

The delay of 15 months measured from date of arrest to departure of Mr. Nugent was due to the State's failure to provide discovery. The total delay of 32 months measured from the date of arrest to the date of commencement of the trial was attributable to the state's failure to provide discovery.

The timeline shows the violation of the right to a speedy trial occurred before the changes in counsel so the state court's treatment of the speedy trial act claim was unreasonable.

The Petitioner repeatedly requested a speedy and public trial. The delay caused Petitioner anxiety and concern about his fate, and denied Petitioner any realistic chance of marshalling alibi witnesses, who died over the interval the case was inactive.

The record does not support the bald conclusions reached by the state court system. The delay was presumptively prejudicial once the delay was longer than 8 months, 22 days. At this point in time, there had been no "churning" of attorneys. The delay was attributable to the failure on the part of the State to comply with discovery rules. Ultimately, the record does not support the claim that the delay of 32 months was attributable to Mr. Verrecchia. Instead, the record indicates the delay was attributable to the State's failure to provide discovery. According to the RISC, the churning of attorneys caused the delay. The record, however, indicates the presumption of prejudice attached before the churning of attorneys.

The RISC's treatment of the claim--and the Magistrate-Judge's treatment of the claim--and the District Court's treatment of the claim attach absolutely no significance to

the presumption of prejudice that is supposed to attach to a delay of 15 months (pre-churning of attorneys) or, for that matter, a delay of 32 months (post churning of attorneys).

**CONCLUSION**

The application for COA should be GRANTED. The Court should summarily remand the case to the district court for discovery and an evidentiary hearing. The State should be required to produce the transcripts of each and every hearing directly or tangentially involved in the 15 month pretrial delay and the 32 month pretrial delay. In addition, the State should be required to produce a complete set of transcripts. The State should be required to produce every scrap of evidence supporting its argument that it was Mr. Verrecchia who was primarily responsible for the 15 month pretrial delay and the 32 month pretrial delay. The Petitioner should be granted leave to submit interrogatories to Mr. Nugent, who is now a Superior Court Judge.

In the alternative, the Court should remand the case to the district court with directions to grant the writ.

/s/Cheryl J. Sturm
Cheryl J. Sturm
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
484/771-2000

/s/S.Paul Ryan
S. Paul Ryan
Attorney at Law
Bar ID #2264
670 Willett Avenue
East Providence, R.I. 02915
401-437-0660

**CERTIFICATION**

Pursuant to AP10 of this Court, effective August, 2006, I hereby certify that on the 12th day of December, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney of record:

Virginia M. McGinn
Department of Attorney General
vmcginn@riag.ri.gov

/s/S. Paul Ryan